[No. 45215. En Banc. December 28, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD E. MCCARTER, *Petitioner.*

*Richard P. Blumberg* and *Allen Ressler* of *Institutional Legal Services,* for petitioner.

*James E. Carty, Prosecuting Attorney,* and *John J. Hilzer* and *Dennis Hunter, Deputies,* for respondent.

DOLLIVER, J.—Richard McCarter was convicted of two misdemeanor counts of contributing to the delinquency of a minor, punishable by a maximum sentence of 1 year in the county jail on each charge.

Prior to sentencing, the prosecuting attorney instituted sexual psychopathy proceedings pursuant to RCW 71.06 and petitioner was sent to Western State Hospital for observation. On September 20, 1973, he was found by the court to be a sexual psychopath and was committed to the Department of Social and Health Services for treatment in Western State Hospital's sexual psychopath program. Petitioner remained at Western State for approximately 2 years. Under RCW 71.06.120, time spent in the hospital is credited on the criminal sentence.

In 1975, a hearing was held pursuant to RCW 71.06.091 to determine whether petitioner should remain in the sexual psychopath program and continue to be confined at the hospital. The trial court determined that petitioner remained a sexual psychopath and was not safe to be at large; he was to remain at Western State for an indefinite period, even though the criminal sentence on his misdemeanor charges had already expired. The trial court found petitioner had not established, either by a "high probability" or by a "preponderance of the evidence", that he was safe to be at large. The Court of Appeals affirmed the

actions of the trial court. *State v. McCarter*, 17 Wn. App. 319, 562 P.2d 995 (1977).

Petitioner claims the trial court erroneously placed the burden on him to prove he was no longer dangerous. We agree. Petitioner had served the maximum time on the underlying criminal sentence; the State had the burden of proving he remained a sexual psychopath.

This court was informed at oral argument that petitioner McCarter had been discharged from probation and was no longer subject to state control. The prosecutor has since filed a motion to dismiss on the grounds of mootness. The motion and supporting documents indicate that McCarter was confined in the sexual psychopathy program at Western State Hospital from 1973 to 1976 when he was conditionally released but remained in out–patient treatment. In July of 1978, after we accepted review of the case but prior to argument, the Clark County Superior Court entered an order discharging petitioner from probationary status. A final evaluation of McCarter was made to the superior court by the director of the sex offender program in October of 1978.

■ This court will review an otherwise moot case if matters of continuing and substantial interest are involved. *In re Patterson*, 90 Wn.2d 144, 579 P.2d 1335 (1978); *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975). Under the criteria set forth in *Hartman,* this case is appropriate for review. It presents a question of public importance which is likely to recur, and for which an authoritative determination is desirable for the future guidance of public officers.

The sexual psychopath statute, RCW 71.06.091, reads as follows:

> A sexual psychopath committed pursuant to RCW 71.06.060 shall be retained by the superintendent of the institution involved until in the superintendent's opinion he is safe to be at large, or until he has received the maximum benefit of treatment, or is not amenable to treatment, but the superintendent is unable to render an

opinion that he is safe to be at large. Thereupon, the superintendent of the institution involved shall so inform whatever court committed the sexual psychopath. The court then may order such further examination and investigation of such person as seems necessary, and may at its discretion, summon such person before it for further hearing, together with any witnesses whose testimony may be pertinent, and together with any relevant documents and other evidence. On the basis of such reports, investigation, and possible hearing, the court shall determine whether the person before it shall be released unconditionally from custody as a sexual psychopath, released conditionally, returned to the custody of the institution as a sexual psychopath, or returned to the department of institutions to serve the original sentence imposed upon him. The power of the court to grant conditional release for any such person before it shall be the same as its power to grant, amend and revoke probation as provided by chapter 9.95 RCW. When the sexual psychopath has entered upon the conditional release, the state board of prison terms and paroles shall supervise such person pursuant to the terms and conditions of the conditional release, as set by the court: *Provided,* That the superintendent of the institution involved shall never release the sexual psychopath from custody without a court release as herein set forth.

The statute vests the initial release determination in the superintendent of the institution, with final determination on dangerousness to be made by the court which originally committed the psychopath to the mental health facility. It provides that the committing court may, in its discretion, hold a hearing with testimony and evidence to assist it in making its decision regarding the release of the psychopath. The statute is silent on the question of the degree and burden of proof to be used by the court in making its determination.

The Court of Appeals found that RCW 71.06.091 did not expressly grant petitioner the rights to be heard, to have counsel, to be confronted with evidence against him, or to cross-examine and offer evidence on his own behalf.

However, these rights were in fact accorded to the petitioner at his release hearing, even though not required by statute. We agree with the Court of Appeals that petitioner lacked standing to attack the constitutionality of the statute for these defects. One cannot urge the invalidity of a statute unless harmed by the particular feature which is challenged. *Standow v. Spokane,* 88 Wn.2d 624, 564 P.2d 1145 (1977); *Moran v. State,* 88 Wn.2d 867, 568 P.2d 758 (1977); *State v. Lundquist,* 60 Wn.2d 397, 374 P.2d 246 (1962).

If petitioner had been granted no hearing, or if the hearing lacked any of the substantial due process guaranties which the petitioner enjoyed, we might well be inclined to invalidate that section of the statute which makes the hearing an optional one and dependent upon the discretion of the committing court. When a psychopath has been confined beyond the expiration of his criminal sentence, due process requires that he be given a full adversary hearing prior to indefinite commitment. *McNeil v. Director, Patuxent Institution,* 407 U.S. 245, 32 L. Ed. 2d 719, 92 S. Ct. 2083 (1972). Under the circumstances, since the due process procedures were followed, we find it unnecessary to pass upon the validity of that portion of the statute.

Due process, however, involves more than the procedural safeguards enumerated above. In criminal and initial mental health commitment proceedings, it includes the right to have guilt or dangerousness established beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *In re Levias,* 83 Wn.2d 253, 517 P.2d 588 (1973).

In this case, the trial court placed the burden of proving nondangerousness upon the petitioner and applied the "highly probable" standard which this court formulated in *State v. Blubaugh,* 80 Wn.2d 28, 491 P.2d 646 (1971). In *Blubaugh,* the court was faced with the question of what burden a criminally insane petitioner (one who has been acquitted of a crime by reason of insanity) must sustain in order to prove that he is safe to be at large and thereby to

obtain his release. In 1971, the criminal insanity statute (RCW 10.76.070) provided that the burden was upon the petitioner but failed to set forth the standard to be applied. Because of the unique nature of a release proceeding, in which a judge or jury is predicting the future behavior of one who has already been adjudged to have committed a criminal act, we held that the petitioner/patient was required to prove that he was safe to be at large by a high probability of the evidence, a standard which fell some-where between "beyond a reasonable doubt" and "prepon-derance of the evidence". In 1973, the legislature repealed RCW 10.76 and enacted a new criminal insanity statute (RCW 10.77) which was amended in 1974 to provide that the petitioner's burden was to prove nondangerousness by a preponderance of the evidence. RCW 10.77.200.

The *Blubaugh* reasoning is not applicable here. In that case, the petitioner's criminal sentence had not yet expired. Had it expired, the criminal insanity statute required that the petitioner be released and that the State then initiate civil commitment proceedings. In civil commitment pro-ceedings, the State must prove dangerousness by clear, cogent and convincing evidence if the patient is to be kept confined. RCW 71.05.310; *In re Levias, supra.*

This is consistent with the notion that any deprivation of liberty beyond a criminal sentence requires the full panoply of due process protections, including a high degree of proof by the State. *In re Andrews,* 368 Mass. 468, 334 N.E.2d 15 (1975); *Jackson v. Indiana,* 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972).

In summary, the respective burdens of proof required for release of the mentally ill are as follows: If a patient was civilly committed, the *State* must prove con-tinued dangerousness by clear, cogent and convincing evi-dence. If the patient was committed after acquittal of a criminal charge by reason of insanity, the *defendant* must prove that he is safe to be at large by a preponderance of the evidence. However, if the underlying criminal sentence has expired, the criminally insane patient is entitled to

automatic release. If the State wishes further confinement and treatment of the criminally insane, it must initiate civil commitment proceedings. This court has not yet determined the burden of proof required for release of sexual psychopaths, the case before us, and the statute does not provide any guidance. Petitioner asks that we place the burden upon the State and define that burden as "beyond a reasonable doubt" for all sexual psychopathy proceedings. We decline petitioner's invitation *except* as to those release proceedings which take place after a sexual psychopath's maximum criminal sentence has expired.

The Court of Appeals found that RCW 71.06.091 did not violate equal protection in permitting potential indefinite commitment of sexual psychopaths, even though criminally insane defendants can be confined only for so long as their maximum penal sentences.

This court had occasion to examine the differences as to burden of proof between persons civilly committed and the criminally insane in *Alter v. Morris,* 85 Wn.2d 414, 536 P.2d 630 (1975). In that case, petitioners claimed the burden of proof for release of the criminally insane (preponderance of the evidence established by the petitioner) should have been the same as for persons civilly committed (established by the State by clear, cogent and convincing evidence). Petitioners argued that, since both the civil and criminal groups are defined by their potential dangerousness (and the standard to be applied in determining their commitment and release is the likelihood of future dangerousness), the difference in procedure could not be justified by its relation to a valid state purpose. We held, however, that the State could validly impose a higher burden on the criminally insane defendant to obtain his release since such individuals have at one time been adjudged to have committed a criminal act, and thus would be more likely to commit a serious act in the future which could endanger others. Thus, the protection of the public was seen to be the primary justification for such a distinction. *See Alter v. Morris, supra* at 420.

We do not believe the holding in *Alter* is applicable in this case. While past criminal conduct may be a valid basis for distinguishing between persons civilly committed and the criminally insane, here we are concerned with whether there is a rational basis for distinguishing the burden of proof required for release of sexual psychopaths and the criminally insane, both of which classifications are based upon acts of criminal conduct.

The Court of Appeals stated it was permissible for the legislature to treat sexual psychopaths differently from the criminally insane, since the sexual psychopath program potentially requires a longer period of treatment than treatment pursuant to the civil commitment statute, which requires a hearing every 6 months. This, however, is not really the issue; the question is whether an impermissible classification has been created between sexual psychopaths who are committed indefinitely, and the criminally insane who are committed only for the duration of their maximum penal sentences. It is difficult to conceive of a necessity for distinguishing between the two groups in terms of requiring a maximum term of penal commitment for one group and not for the other.

We find it significant that, if the defendant had been transferred to the sexual psychopath program from another correctional institution, his term of confinement at Western State Hospital would have been limited to his maximum criminal sentence under RCW 72.68.031. There does not appear to be any logical reason for distinguishing between persons who are transferred to mental health facilities because they are found to be sexual psychopaths after confinement in a prison and persons originally sent to mental health facilities by the sentencing court.

Because the statute is silent on the question of burden of proof, it is not necessary to invalidate that section which deals with release proceedings. It is the imposition of the burden of proof upon the petitioner by the trial court which

violates the equal protection clause. When the criminal insanity statute (RCW 10.77) and the sexual psychopathy statute (RCW 71.06) are read together, the guaranties of equal protection under the Fourteenth Amendment and Const. art. 1, § 12, require that the burden of proof for release after expiration of the underlying criminal sentence be the same in both types of cases. Accordingly, we hold that, in a sexual psychopath release proceeding, after expiration of the criminal sentence, the State has the same burden of proving dangerousness as in a civil commitment. Because such a proceeding is ancillary to the criminal proceeding, the standard to be applied is "beyond a reasonable doubt". Such a standard is equivalent to "clear, cogent and convincing evidence" in civil commitment cases. *In re Levias, supra; In re Patterson*, 90 Wn.2d 144, 579 P.2d 1335 (1978).

Reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.