[No. 48744–8.   En Banc.   December 22, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. THEODORE
RINALDO, *Petitioner.*

*Gerald R. Gates,* for petitioner.

*Russ Juckett, Prosecuting Attorney,* and *James B. Roche, Chief Criminal Deputy,* for respondent.

STAFFORD, J.—Defendant (petitioner in this court) appealed from a trial court order committing him for treatment as a sexual psychopath. The Court of Appeals dismissed the appeal as moot. We reverse the Court of Appeals.

I

Defendant was charged with third degree statutory rape and indecent liberties. The State filed a timely petition for a determination of sexual psychopathy pursuant to RCW 71.06.020. Thereafter, a jury found defendant guilty of the criminal charges following which he was committed to Western State Hospital for a 90-day period of observation on the sexual psychopathy petition.

Upon completion of the observation period defendant was returned to the trial court for a hearing on the issue of sexual psychopathy. Following an extensive adversarial hearing the trial court determined, by a preponderance of the evidence, that defendant was a sexual psychopath. The trial court entered the order appealed from and committed defendant to the sexual psychopath program at Western State Hospital.

After several months of evaluation the Superintendent of Western State Hospital notified the trial court that although defendant was indeed a sexual psychopath, he was not amenable to treatment. Thus, he was returned to the trial court for further disposition, pursuant to RCW 71.06-.091. The trial court ordered execution of the original criminal sentences. In the meantime the Court of Appeals affirmed the criminal convictions.[1]

---

[1] The criminal appeal should be differentiated from defendant's instant appeal

The Court of Appeals dismissed as moot defendant's appeal of the sexual psychopath issue. In so doing it held in its unpublished opinion:

> Execution of the original commitment to prison brought the sexual psychopathy proceedings to a conclusion. The defendant is free from the obligation of the order appealed from. The issue sought to be resolved has therefore become an abstract question which does not rest upon existing facts or rights. It is moot. . . .
>
> . . . Any injury resulting from the order that may relate to defendant's parole status or denial of privileges is speculative. . . .
>
> . . . Any injury to his reputation arises from the original conviction and sentence and from the testimony at the hearing regarding diagnosis. It does not arise from the nullified order committing him to Western State Hospital for evaluation and treatment.

We do not agree with the above reasoning. The Court of Appeals is reversed and the cause is remanded for further action consistent with this opinion.

■ The fact that defendant ultimately was committed to prison did not bring the sexual psychopathy proceedings to a conclusion. Rather, defendant was committed to prison because it was determined that although he was a sexual psychopath he was not amenable to treatment at Western State Hospital. Thus, the sexual psychopath designation remained in full force; only defendant's place of confinement was changed.

Defendant emphasizes that he is not so much challenging his commitment to either the hospital or the prison as he is challenging the trial court's basic determination of sexual psychopathy. As defendant points out, as long as the "sexual psychopath" label attaches he is subject to its consequences whether he is confined at the hospital or the prison.

Contrary to the Court of Appeals observation that "defendant is free from the obligation of the order appealed

---

of the trial court's determination of sexual psychopathy and the resultant commitment to Western State Hospital.

from", the consequences of the "sexual psychopath" label are both several and severe. The designation's impact upon defendant's parole status is far from speculative. For example, when the prosecuting attorney recommended that the Board of Prison Terms and Paroles set defendant's minimum sentence at 7 years, he stressed the fact that defendant had been classified as an untreatable sexual psychopath. Additionally, the determination of sexual psychopathy has a direct impact on any possible early release under the Prison Overcrowding Reform Act, Laws of 1982, ch. 228, § 1. The act specifically excludes "sexual psychopaths" from consideration for early release. Finally, the stigma associated with the classification is of no small consequence. *See United States ex rel. Stachulak v. Coughlin,* 520 F.2d 931 (7th Cir. 1975), *cert. denied,* 424 U.S. 947 (1976); *Sarzen v. Gaughan,* 489 F.2d 1076 (1st Cir. 1973); *People v. Burnick,* 14 Cal. 3d 306, 535 P.2d 352, 121 Cal. Rptr. 488 (1975). Under these circumstances we are constrained to conclude the appeal is not moot.

## II

Even if this cause were moot we would review it because it presents a question of public importance which is likely to recur and for which authoritative determination is desirable for the future guidance of public officers. *State v. McCarter,* 91 Wn.2d 249, 588 P.2d 745 (1978); *In re Patterson,* 90 Wn.2d 144, 579 P.2d 1335 (1978); *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 532 P.2d 614 (1975). Among the several issues raised is the standard of proof by which the State must establish sexual psychopathy in the initial hearing.

In the instant case the trial court employed "preponderance of the evidence" as the requisite standard of proof. Defendant contends the proper standard should be proof "beyond a reasonable doubt". We agree.

Washington's sexual psychopath statute, as with most similar statutes, does not specify the standard of proof required for commitment. Resolution of that matter

has been left to the courts. A review of the several jurisdictions reveals no unanimity, however. Annot., *Standard of Proof Required Under Statute Providing for Commitment of Sexual Offenders or Sexual Psychopaths,* 96 A.L.R.3d 840 (1979). In fact, there are three distinct views. Some courts accept "preponderance of the evidence" as the requisite standard. *See, e.g., State v. Hanson,* 100 Wis. 2d 549, 302 N.W.2d 452 (1981); *State ex rel. Fulton v. Scheetz,* 166 N.W.2d 874 (Iowa 1969). A second, but smaller group, opt for proof by "clear, cogent and convincing evidence". *See, e.g., Hollis v. Smith,* 571 F.2d 685 (2d Cir. 1978) (interpreting New York statute).[2] Both groups appear to characterize the hearings and resultant commitments as "civil" rather than "criminal" in nature. They emphasize that the offender has previously been found guilty of the sex offense beyond a reasonable doubt. It is suggested that as opposed to criminal punishment, actual guilt is not a factor and thus proof beyond a reasonable doubt should not be necessary.

On the other hand, a clear majority of jurisdictions has held the standard of proof should be "beyond a reasonable

---

[2]While the language of *Hollis v. Smith,* 571 F.2d 685 (2d Cir. 1978) is initially appealing, this opinion, as with the "preponderance of the evidence" opinions, actually has little legal reasoning. The view of the *Hollis* court rests solely on the feeling that it would be easier from a "practical standpoint" to commit someone under a sexual psychopathy statute using "clear, unequivocal, and convincing evidence" than if a standard of "beyond a reasonable doubt" were used. This may be true under the New York statutory scheme; however, such a burden of proof would be inappropriate in this state. We have long reserved the "clear, cogent and convincing" standard for civil matters. As we made clear in *State v. McCarter,* 91 Wn.2d 249, 588 P.2d 745 (1978), the commitment of a sexual psychopath is more closely aligned with criminal cases than with civil. We therefore hold the initial commitment of a sexual psychopath following a conviction on the underlying criminal charges requires proof "beyond a reasonable doubt," not because this is a criminal matter, but because due process requires no less.

Moreover, while we recognize there may be difficulties associated with a subjective determination of the mental state, the reasonable doubt standard is not an unreasonable burden. As the court in *United States ex rel. Stachulak v. Coughlin,* 520 F.2d 931 (7th Cir. 1975), *cert. denied,* 424 U.S. 947 (1976) notes at page 936: "If the disparate opinions of psychiatrists and the vagaries of proof and prediction suggest anything, it is the desirability of the utmost care in reaching the commitment decision."

doubt". Generally, this group reasons that due process mandates the standard in view of the loss of liberty entailed by the proceedings as well as the stigma associated with being branded a sexual psychopath. In the latter group the importance of classifying a proceeding as "civil" or "criminal" appears to be of less importance than in the first two groups. In the latter group the *principles* underlying the process have taken precedence over the *mode* of procedure.

While some jurisdictions have predicated the inapplicability of constitutional rights on the "civil" nature of the proceeding, it is of interest that the United States Supreme Court has placed the wisdom of that view in doubt. Although not discussing the appropriate standard of proof, in *Specht v. Patterson,* 386 U.S. 605, 18 L. Ed. 2d 326, 87 S. Ct. 1209 (1967), the high Court took the position that, despite the apparent civil nature of a sexual psychopathy proceeding, sound logic and fundamental justice dictate the applicability of due process normally applicable in criminal cases. Consequently, the crux of the issue before us is to determine whether due process imposes a standard of proof rising to the dignity of reasonable doubt.

*United States ex rel. Stachulak v. Coughlin, supra,* leaves no doubt that the principles of due process apply to sexual psychopathy proceedings. "Individuals who are committed pursuant to [the terms of the act] most surely suffer a 'grievous loss'". *Coughlin,* at 935. Having made that observation, the *Coughlin* court reasons most logically that *In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970) is controlling. *Winship* held the reasonable doubt standard was an essential element of due process and thus applicable in adjudicatory juvenile delinquency hearings. The holding was based on the premise that, just as in a criminal prosecution, an adverse judgment in the juvenile delinquency hearing raised a real possibility of loss of liberty and the certainty of stigmatization as a violator of the criminal law. 397 U.S. at 366–67. As the court in *Coughlin* states at pages 935–37:

Here, the loss of liberty is as great, if not greater, than the loss in *Winship*. . . . Likewise with respect to stigma an involuntary commitment for [sexual psychopathy] presents an *a fortiori* case: Unlike the delinquency proceedings in *Winship,* these actions are not confidential, and an adjudication of [sexual psychopathy] is certainly more damning than a finding of juvenile delinquency.

. . .

Burdens of proof serve to allocate the risk of an erroneous decision between the parties in a lawsuit, and the reasonable–doubt standard reflects society's judgment "that it is far worse to convict an innocent man than to let a guilty man go free." *In re Winship, supra,* 397 U.S. at 372, 90 S.Ct. at 1077. (Harlan, J., *concurring*). We recognize that society has a substantial interest in the protection of its members from dangerous deviant sexual behavior. But when the stakes are so great for the individual facing commitment, proof of sexual dangerousness must be sufficient to produce the highest recognized degree of certitude.

In *People v. Burnick,* 14 Cal. 3d 306, 535 P.2d 352, 121 Cal. Rptr. 488 (1975) the California Supreme Court followed similar reasoning when the state suggested the court should apply the same standard of proof to a sexual psychopathy hearing as that applicable to a run–of–the–mill automobile negligence action. It, like the *Coughlin* court, held that "so drastic an impairment of the liberty and reputation of an individual must be justified by proof beyond a reasonable doubt." *Burnick,* at 310.

The court in *Burnick,* as in *Coughlin,* relied strongly on *In re Winship, supra,* to undercut the "civil" label suggested for sexual psychopathy proceedings. It looked more to the true impact of the proceedings rather than relying on labels of convenience when considering the "*massive curtailment of liberty*" at stake in sexual psychopathy hearings. *Burnick,* at 319. Reflecting on *Winship,* the *Burnick* court observed correctly that a sexual psychopath's loss of freedom is much more severe than that of the juvenile delinquent who is entitled to the highest standard of proof. Further, the "stigma" recognized in *Winship* as a second

basis for requiring the highest degree of certitude was found to be at least as great when one is judicially pronounced a sexual psychopath. From these premises the *Burnick* court concluded that due process requires proof beyond a reasonable doubt in proceedings that lead to the involuntary commitment of persons found to be sexual psychopaths.

Those jurisdictions that have adopted the standard of proof required for civil commitment (*i.e.*, "preponderance of the evidence" and "clear, cogent and convincing evidence") have, in general, offered little reasoned support for their conclusions other than to rely heavily on the labels "civil" and "criminal". While those labels are convenient tools for conveying a general conception, in this setting they are at best conclusory. Courts should not permit themselves to be so mesmerized as to perceive nothing but the labels. Labels and mere analogies do not provide adequate answers to the problem facing us. Legal fictions should not be employed to rationalize the rejection of constitutional safeguards where individual liberty is at stake. This is particularly true when those legal fictions challenge credulity and do violence to reason. Note, *Out of Tune With the Times; The Massachusetts SDP Statute,* 45 B.U. L. Rev. 391 (1965); *In re Miller,* 98 N.H. 107, 108–09, 95 A.2d 116, 117 (1953).

In clear contrast to decisions from the minority jurisdictions, the courts in *United States ex rel. Stachulak v. Coughlin, supra,* and *People v. Burnick, supra,* have considered in detail both social concerns and legal precedent. "The analogy to *Winship* is clear and persuasive, sufficient alone to warrant the result." Comment, *Due Process Requires Proof Beyond Reasonable Doubt for Commitment of Sex Offenders,* 1975 Wash. U. L.Q. 1092, 1102.

We are compelled to follow the logic of *Coughlin* and *Burnick.* It is clear some elements of due process are required in a proceeding that might result in the loss of liberty, whether the proceeding is labeled "civil" or "criminal". *Specht v. Patterson, supra.* It is equally clear that in

criminal proceedings a state must prove its case beyond a reasonable doubt. It remained for *In re Winship* to apply that reasoning to juvenile proceedings on the theory that youthful offenders face both lengthy incarceration and social stigma. As observed in both *Coughlin* and *Burnick,* logic requires that the rationale in *In re Winship* be extended to sexual psychopathy proceedings for reasons even more compelling than those in *Winship.*

We note with interest our holding in *State v. McCarter, supra* at 257. There we held that in a sexual psychopathy release proceeding, held after expiration of the criminal sentence, the proper standard of proof is "beyond a reasonable doubt" because the hearing is ancillary to the criminal proceeding. We see no logical reason to hold differently in the initial commitment proceeding.

Consequently, we hold that "beyond a reasonable doubt" is the proper standard of proof to be employed in the initial sexual psychopathy commitment proceeding. The trial court erred by its failure to use the proper standard.

Having decided the basic issues of mootness and the standard of proof, all remaining assignments of error are remanded to the Court of Appeals for resolution. In so doing, we also observe that the trial court heard a substantial amount of testimony at the sexual psychopathy hearing. Despite defendant's oral request, the trial court entered no findings of fact nor conclusions of law. The Court of Appeals observed correctly: "It is, therefore, almost impossible to know the factual basis of the order before us, for the purposes of appellate review." Under these circumstances it will be necessary for the Court of Appeals to resolve this defect as well, in light of CrR 6.1(c).

BRACHTENBACH, C.J., UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.