[No. 11793-9-I. Division One. January 23, 1984.]

THE STATE OF WASHINGTON, *Appellant,* v. JEFFREY GANN, *Respondent.*

*Norm Maleng, Prosecuting Attorney, Rebecca Roe* and *Deanna Jennings Fuller, Deputies,* and *Art Pepin, Legal Intern,* for appellant.

*Ronald Kessler,* for respondent.

RINGOLD, J.—The State appeals an order terminating probation and releasing the defendant, Jeffrey Gann, from custody. We reverse and remand for further proceedings.

Gann was found guilty of second degree rape, and was sentenced on May 17, 1976. The State filed a sexual psychopathy petition pursuant to RCW 71.06.020. The court deferred the imposition of sentence for 5 years on condition that Gann be accepted into and successfully complete the sex offender program at Western State Hospital. Following 90 days' observation, Gann was diagnosed as a sexual psychopath and committed to Western State pursuant to RCW 71.06.060.

Gann remained in the confined treatment program until January 1979, when he was placed on outpatient status. He regressed, and was returned to residential status with daytime work release. This setback meant that Gann could not complete the treatment program before September 1981. On April 7, 1981, Gann told his probation officer that his probation would expire before he completed the treatment program. He then signed a form entitled "Consent to Extension of Deferral," which read:

> I, Jeffrey Gann, have discussed with my Probation and Parole Officer the extension of my deferral of sentence granted _____. I have not been able to fulfill and meet the conditions of my deferral of sentence prior to its expiration date. I agree and consent to an extension of my deferral for an additional period of _____ from date of entry of this order under the same terms and conditions and waive the right to a court hearing on this extension.

On April 28, 1981, the court issued an ex parte order extending Gann's probation for 1 year, from May 16, 1981 to May 16, 1982. In February 1982, Western State returned Gann to the court pursuant to RCW 71.06.091 after concluding that he was still a sexual psychopath and was not safe to be at large, but was no longer amenable to treatment.

A hearing was held on April 29, 1982, to consider the State's motion to revoke probation and Gann's motion to terminate probation. The court found that its ex parte order extending Gann's probation violated due process because Gann had not been advised he had the right to counsel at the extension hearing. The court concluded it lost jurisdiction on May 16, 1981, the date Gann's deferred sentence was originally due to expire, and issued an order terminating Gann's probation and releasing him from the King County Jail. The State appeals.

The issue presented is whether the court had jurisdiction over Gann at the hearing held on April 29, 1982. The State advances two theories in support of its contention that the court had jurisdiction: (1) the ex parte order extending

Gann's probation was valid because due process rights are not implicated by probation extensions, even when the defendant has been committed for treatment as a sexual psychopath pursuant to RCW 71.06; and (2) even if the ex parte extension order was invalid, the court retained jurisdiction pursuant to RCW 71.06.

### VALIDITY OF EX PARTE PROBATION EXTENSION

*State v. Campbell,* 95 Wn.2d 954, 632 P.2d 517 (1981) holds that ex parte probation extension proceedings do not violate due process. In distinguishing such proceedings from probation revocation hearings, the court stated:

> While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as "grievous" a "loss" as revocation . . . In fact, the primary "loss" suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation.

*Campbell,* at 958, quoting *Skipworth v. United States,* 508 F.2d 598, 601 (3d Cir. 1975). Recognizing the potential for prejudice in ex parte probation proceedings, the court exercised its supervisory powers to require that in the future, courts "'provide notice to the probationer of the proposed extension and advise him that he has a right to a hearing should he so desire, together with the assistance of counsel.'" *Campbell,* at 958, quoting *Skipworth,* at 602–03.

The *Campbell* opinion was filed on August 13, 1981. The ex parte extension of Gann's probation took place on April 28, 1981. Gann concedes that the supervisory rule announced in *Campbell* is prospective only and has no application to this case. He argues instead that *Campbell* is distinguishable because the defendant in *Campbell* was committed for mental health treatment as a condition of probation, while Gann was committed for treatment pursuant to the sexual psychopathy act, RCW 71.06. Gann contends that a commitment under this statute implicates a liberty interest not present when a defendant is sentenced under the court's inherent discretionary powers. We agree,

and hold that this liberty interest requires that a defendant committed as a sexual psychopath be accorded due process protections in probation extension proceedings.

■ Initial commitment proceedings under RCW 71.06 require the full panoply of due process rights, including proof of sexual psychopathy beyond a reasonable doubt, because "'[i]ndividuals who are committed pursuant to [the terms of the act] most surely suffer a "grievous loss."'" *State v. Rinaldo,* 98 Wn.2d 419, 424, 655 P.2d 1141 (1982), quoting *United States ex rel. Stachulak v. Coughlin,* 520 F.2d 931, 935 (7th Cir. 1975), *cert. denied,* 424 U.S. 947 (1976). This loss includes confinement, impact on the defendant's parole status, and the stigma associated with the classification of sexual psychopathy. *Rinaldo,* at 422. In contrast, requiring a defendant to undergo mental health treatment as a condition of probation is within the trial court's discretionary sentencing powers and need only be a reasonable requirement. *See State v. Bennett,* 35 Wn. App. 298, 300–01, 666 P.2d 390 (1983); *State v. LaRoque,* 16 Wn. App. 808, 560 P.2d 1149 (1977). Due process safeguards also apply to a sexual psychopathy release proceeding held after the defendant's underlying criminal sentence has expired. *See State v. McCarter,* 91 Wn.2d 249, 252–53, 588 P.2d 745 (1978).

Whether due process principles are implicated in probation extension proceedings for sexual psychopaths is a novel question. "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.'" *Morrissey v. Brewer,* 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 168, 95 L. Ed. 817, 71 S. Ct. 624 (1951) (Frankfurter, J., concurring). The degree of loss suffered by extension of probation differs if one is committed for treatment as a sexual psychopath pursuant to statute, as here, rather than under the court's discretionary sentencing powers, as in *Campbell.* The prime loss suffered by probation extension of a defendant sentenced in the court's discretion

is the threat of future revocation. While this same threat is present when a defendant is committed for treatment under the sexual psychopathy act, greater restrictions on liberty are also involved. A defendant committed for mental health treatment under the court's discretionary powers can refuse such treatment. A defendant found to be a sexual psychopath must be committed to an approved treatment facility, *State v. Bunich,* 28 Wn. App. 713, 717, 626 P.2d 47 (1981), from which he can be released only by court order. *See* RCW 71.06.091. Moreover, the standards for determining whether a sexual psychopath is entitled to be released from treatment differ according to whether the underlying criminal sentence has expired. *McCarter,* at 255. We hold that due process requires that a defendant committed for treatment under the sexual psychopathy act be advised of the right to a hearing with the assistance of counsel prior to the extension of probation.

### WAIVER OF THE RIGHTS TO A HEARING AND COUNSEL

Gann concedes that he was informed of his right to a hearing on the proposed probation extension, and that he effectively waived this right. He contends, however, that he did not effectively waive the right to counsel. The consent form signed by Gann was silent as to the right to counsel. Gann's probation officer testified she did not inform him that he had the right to counsel. Gann testified that he did not know he had the right to counsel.

A waiver of the right to counsel is effective only if knowingly, voluntarily, and intelligently made. *State v. Tetzlaff,* 75 Wn.2d 649, 652, 453 P.2d 638 (1969). Gann was not advised of his right to counsel. Nor does the record support the State's assertion that he had actual knowledge of that right. One cannot effectively waive the right to counsel without knowledge of its existence. *Tetzlaff.* Nor can this court presume a waiver of this right from a silent record. *Carnley v. Cochran,* 369 U.S. 506, 516, 8 L. Ed. 2d 70, 82 S. Ct. 884 (1964). The trial court correctly concluded that its ex parte order extending Gann's probation was

invalid for lack of due process, and that it lost *criminal* jurisdiction over Gann on May 16, 1981, the date Gann's deferred sentence was originally due to expire.

COMMITMENT PURSUANT TO SEXUAL PSYCHOPATHY ACT

■ The State next contends that even if Gann's underlying criminal sentence had expired, the court retained jurisdiction under the terms of the sexual psychopathy act. The trial court did not consider this issue. Gann argues that this jurisdictional theory cannot be considered for the first time on appeal, citing *Ruddach v. Don Johnston Ford, Inc.,* 97 Wn.2d 277, 644 P.2d 671 (1982). The rule that a case will not be reviewed on a theory different from that on which it was tried in the trial court does not apply to such questions as the jurisdiction of the court. *Peoples Nat'l Bank v. Peterson,* 82 Wn.2d 822, 830, 514 P.2d 159 (1973). This court may properly consider whether the trial court had jurisdiction pursuant to the sexual psychopathy act.

■ RCW 71.06 establishes procedures for determining the sexual psychopath status of a defendant charged with a sex offense. Although the sexual psychopathy proceeding is ancillary to the criminal prosecution, *McCarter,* at 257, it involves civil rather than criminal commitment. *Bunich,* at 718. If the defendant is acquitted on the underlying criminal charge, the court loses the criminal jurisdiction it acquired upon the filing of the information and is precluded from ordering the defendant's confinement in a correctional institution. *See* RCW 71.06.030.[1] An acquittal, however, does not affect the civil jurisdiction which the

---

[1]RCW 71.06.030 reads:

"The court shall proceed to hear the criminal charge. If the defendant is convicted or has previously pleaded guilty to such charge, judgment shall be pronounced, but the execution of the sentence may be deferred or suspended, as in other criminal cases, and the court shall then proceed to hear and determine the allegation of sexual psychopathy. Acquittal on the criminal charge shall not operate to suspend the hearing on the allegation of sexual psychopathy: *Provided,* That the provisions of RCW 71.06.140 authorizing transfer of a committed sexual psychopath to a correctional institution shall not apply to the committed sexual psychopath who has been acquitted on the criminal charge."

court acquires upon the filing of a sexual psychopathy petition. *See Bunich.*

The expiration of the psychopath's underlying criminal sentence has the same effect. The court loses criminal jurisdiction, but retains civil jurisdiction pursuant to the sexual psychopathy act. Unlike the person committed for mental health treatment under the criminally insane statutes, the sexual psychopath is not entitled to immediate release upon the expiration of his underlying criminal sentence. *McCarter,* at 254–55. Rather, the psychopath may be released only by court order,[2] and is subject to indefinite commitment in an appropriate treatment facility if the State can prove his continued dangerousness beyond a reasonable doubt. *McCarter,* at 256–57.

We hold that the court lost criminal jurisdiction over Gann on May 16, 1981, but retained civil jurisdiction pursuant to RCW 71.06. We therefore reverse and remand to

---

[2]RCW 71.06.091:

"Postcommitment proceedings, releases, and further dispositions. A sexual psychopath committed pursuant to RCW 71.06.060 shall be retained by the superintendent of the institution involved until in the superintendent's opinion he is safe to be at large, or until he has received the maximum benefit of treatment, or is not amenable to treatment, but the superintendent is unable to render an opinion that he is safe to be at large. Thereupon, the superintendent of the institution involved shall so inform whatever court committed the sexual psychopath. The court then may order such further examination and investigation of such person as seems necessary, and may at its discretion, summon such person before it for further hearing, together with any witnesses whose testimony may be pertinent, and together with any relevant documents and other evidence. On the basis of such reports, investigation, and possible hearing, the court shall determine whether the person before it shall be released unconditionally from custody as a sexual psychopath, released conditionally, returned to the custody of the institution as a sexual psychopath, or transferred to the department of corrections to serve the original sentence imposed upon him. The power of the court to grant conditional release for any such person before it shall be the same as its power to grant, amend and revoke probation as provided by chapter 9.95 RCW. When the sexual psychopath has entered upon the conditional release, the state board of prison terms and paroles shall supervise such person pursuant to the terms and conditions of the conditional release, as set by the court: *Provided,* That the superintendent of the institution involved shall never release the sexual psychopath from custody without a court release as herein set forth."

the trial court for further proceedings consistent herewith.

SWANSON and SCHOLFIELD, JJ., concur.

Reconsideration denied February 22, 1984.