[No. 16889-1-III. Division Three. February 18, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN ADAM PHILLIPS, *Appellant*.

*Jerry M. Makus* of *Makus & Makus*, for appellant.

*James L. Nagle, Prosecuting Attorney*, and *Joseph M. Golden, Deputy*, for respondent.

SWEENEY, J. — A diversion agreement is an agreement between a juvenile and the State. It allows the juvenile to avoid prosecution by agreeing to fulfill a number of State-imposed conditions. RCW 13.40.080(1), (2); *State v. Quiroz*, 107 Wn.2d 791, 793-94, 733 P.2d 963 (1987). But the State must advise the juvenile of his or her right to a lawyer before entering into the agreement. RCW 13.40.080(10); JuCR 6.2(a); JuCR 6.3. The juvenile must also waive his or her right to an attorney—in writing. JuCR 6.3. The court rule, JuCR 6.3, sets out a form which clearly and succinctly accomplishes this requirement. Walla Walla County did not require that John Phillips sign a JuCR 6.3 waiver form before entering six separate diversion agreements.

The first question here is whether Mr. Phillips can challenge the earlier diversion agreements in a later, unrelated juvenile disposition proceeding. Since we conclude that he may, we must answer two additional questions: (1) whether sufficient evidence supports the court's finding that Mr. Phillips properly waived his right to an attorney, and (2) whether execution of a second form, one materially similar to the Advice About Diversion Process form required by JuCR 6.4, substantially satisfied the waiver requirements of JuCR 6.3. We answer both questions in the negative. We accordingly reverse Mr. Phillips' sentence and remand for resentencing without consideration of the six earlier diversion agreements in his criminal history.

## FACTS

The court found John Phillips, a juvenile, guilty of rape of a child in the first degree and being a minor in possession and/or consuming liquor. His criminal history included seven prior offenses. Six had been resolved by diversion agreements.

We segregate the diversion agreements signed by Mr. Phillips into two categories. In the first four, he signed a document that substantially complied with the form set out in JuCR 6.4 (Advice About Diversion Process form). That document included the following advice:

> You have the right to talk to a lawyer about whether you should participate in Diversion or whether you should go to court. You will not have to pay for a lawyer if you cannot afford one. If you believe you did not commit this offense you should talk to a lawyer.

The last two agreements gave the same advice but then went on to require the following choice:

I choose to A:＿＿ ENTER INTO A DIVERSION AGREEMENT,
B:＿＿ GO TO COURT, OR,
C:＿＿ TALK TO A LAWYER BEFORE

### MAKING A DECISION ABOUT DIVERSION.

Mr. Phillips chose A.

Mr. Phillips moved to exclude all six diversion agreements from his criminal history because he had not waived his right to an attorney before entering into the agreements—a requirement of JuCR 6.3. And he therefore argued that the Walla Walla County Juvenile Services did not satisfy the requirements of JuCR 6.2[1] or JuCR 6.3.[2]

The court found that before he entered into the first four diversion agreements, Mr. Phillips had received a letter and read another document which informed him of his

---

[1]JuCR 6.2 provides:

"**(a) Advice of Right to Representation by Lawyer.** A juvenile found eligible for diversion shall, prior to the initial interview with the diversion unit, be advised of his or her right to consult with a lawyer concerning the juvenile's decision to enter into a diversion agreement or to appear in juvenile court.

"**(b) Appointment of Lawyer.** The court shall appoint a lawyer for any juvenile who is financially unable to obtain a lawyer for the consultation if the juvenile does not waive that right pursuant to rule 6.3.

"**(c) Retained Lawyer During Diversion Process.** A juvenile may be represented by a retained lawyer during the diversion process in accordance with RCW 13.40.080(6)."

[2]JuCR 6.3 provides:

"A waiver containing the following statements and in substantially the following form shall be read by, signed by, and a copy given to a juvenile who waives the right to consult with a lawyer before an initial interview with a diversion unit:

*"Waiver of Lawyer*

"1. I know that I can talk to a lawyer about whether I should enter into a diversion process and will not have to pay for one if I cannot afford it.

"2. I know that a lawyer can look at my police reports, tell me about the law, help me understand my rights, and help me decide whether I should enter into a diversion process or go to juvenile court.

Dated _____ Dated _____

_____ _____

Parent or Guardian (optional) Juvenile

The above statement was read to the juvenile and signed by the juvenile on the date indicated.

_____

Representative of Diversion Unit"

right to counsel. The court also found that before signing the last two agreements, Mr. Phillips' probation officer read and explained his right to a lawyer. The court further found that Mr. Phillips signed all six agreements containing the JuCR 6.4 advice of right to a lawyer.

Relying on *State v. Ammons*,[3] the court concluded that Mr. Phillips could not contest the propriety of the earlier diversion agreements in this later juvenile disposition proceeding. The court further concluded that Walla Walla's diversion procedures satisfied the essentials of due process and fair play. *Quiroz*, 107 Wn.2d 791. And it included all six diversion agreement dispositions in his criminal history. It then sentenced Mr. Phillips to a standard range sentence.

## DISCUSSION

■ Right to Challenge Earlier Diversion Agreements. A sentencing court cannot consider a prior conviction that is constitutionally invalid on its face—one that "evidences infirmities of a constitutional magnitude." *State v. Ammons*, 105 Wn.2d at 187-88. The phrase "on its face" has been interpreted to mean those documents signed as part of a plea agreement. *Id.* at 187-89; *State v. Aronson*, 82 Wn. App. 762, 766, 919 P.2d 133 (1996). Failure to waive counsel is such a defect. *State v. Herzog*, 112 Wn.2d 419, 428-29, 771 P.2d 739 (1989) (explaining *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967)).

A diversion agreement is not a conviction. *Quiroz*, 107 Wn.2d at 794. It is, however, included in a juvenile's criminal history for sentencing purposes. *Id.* And because these agreements count as part of the juvenile's criminal history, a juvenile may be denied future diversion or be subject to longer sentences for future offenses. *Id.* Like a conviction, the juvenile remains under State supervision. *Id.* By the agreement, the juvenile is subject to conditions like com-

---

[3]*State v. Ammons*, 105 Wn.2d 175, 188, 713 P.2d 719, 718 P.2d 796 (stating a defendant generally has no right to contest a prior conviction at a subsequent sentencing), *cert. denied*, 479 U.S. 930 (1986).

munity service, restitution, fines, counseling, or other restrictions. RCW 13.40.080(2); JuCR 6.4.

So although a juvenile may avoid "conviction" by this process, the consequences of the agreement are much the same as a "conviction."

The prerequisites then for entering into a diversion agreement—including waiver of the right to counsel—must be apparent on the face of the agreement. *Ammons*, 105 Wn.2d at 187-89. For that reason, the diversion agreements here are defective. None of the documents Mr. Phillips signed demonstrate, on their face, that he waived counsel as required by JuCR 6.3.

 Waiver of Counsel under JuCR 6.3. The next question is whether Mr. Phillips' signature on his JuCR 6.4 Advice About Diversion Process form satisfies the JuCR 6.3 requirement that he waived the right to an attorney. We conclude it does not. None of the six agreements satisfy the essentials of due process and fair play. *Quiroz*, 107 Wn.2d at 798-99.

The diversion agreement process is controlled by a set of rules promulgated by the Supreme Court. *Id.* at 794.

> JuCR 6.2(a) ensures that a juvenile shall be told of his or her right to discuss with a lawyer whether or not to enter into a diversion agreement prior to the initial interview with the diversion unit. JuCR 6.3 requires that a juvenile who has chosen to waive the right to counsel sign a written waiver form to that effect.

*Id.*

It is preferable, and JuCR 6.3 and JuCR 6.4 contemplate, that the advice of the right to a lawyer and the waiver of that right be separated into two separate procedures. *Quiroz*, 107 Wn.2d at 796. Accordingly, each rule sets out a form to that effect. JuCR 6.3; JuCR 6.4 This is consistent

with a constitutional policy that the advise of rights is, certainly, not the same as a waiver of those rights.[4]

A waiver of the right to counsel must be knowingly, voluntarily, and intelligently made. *State v. Bebb*, 108 Wn.2d 515, 525, 740 P.2d 829 (1987). We indulge every reasonable presumption against waiver of fundamental constitutional rights, including the right to counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A.L.R. 357 (1938). The waiver must affirmatively appear in the record. *State v. Gann*, 36 Wn. App. 516, 521, 675 P.2d 1261 (1984).

The record here does not support the court's finding that Mr. Phillips was informed of his right to counsel before entering into the first four diversion agreements. JuCR 6.2. The record does not support the finding that Mr. Phillips' probation officer read and explained his right to counsel before signing the last two agreements. JuCR 6.2.

Mr. Phillips did sign a JuCR 6.4 Advice About Diversion Process form with all six diversion agreements. But this record does not reflect that he waived his right to counsel, as required by JuCR 6.3. *Quiroz*, 107 Wn.2d at 795-96 (finding that juveniles waived their right to counsel based on testimony of juveniles and probation officers and juveniles' signatures on waiver of counsel form).

Conclusion. The waiver of counsel required by JuCR 6.3

---

[4]*Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (requiring that before a defendant knowingly and intelligently waives the right to counsel and represents himself pro se, "he should be made aware of the dangers and disadvantages of self-representation"); *In re Gault*, 387 U.S. 1, 41-42, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) (holding that juvenile and his parents must be advised of the right to counsel in juvenile proceedings and the mother's "knowledge that she could employ counsel was not an 'intentional relinquishment or abandonment' of a fully known right"); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 209, 691 P.2d 957 (1984) (relying on *Faretta* and quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268, 143 A.L.R. 435 (1942) (noting that a defendant may waive the constitutional right to assistance of counsel only if " 'he knows what he is doing and his choice is made with eyes open' "); *City of Tacoma v. Bishop*, 82 Wn. App. 850, 858, 920 P.2d 214 (1996) (noting that, as a prerequisite to a valid waiver of counsel, "the court must ensure the waiver is voluntary, and that the defendant is aware of the risks of self-representation"); CrR 4.1 (before finding waiver of counsel valid, "the court shall ascertain whether this waiver is made voluntarily, competently and with knowledge of the consequences").

was not signed. The diversion agreements are therefore unconstitutional on their face and should not have been considered for sentencing. We remand for resentencing without consideration of Mr. Phillips' six prior diversion agreements.

BROWN and KATO, JJ., concur.