IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70912-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| HUNG MINH HOANG, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 17, 2014 |

SCHINDLER, J. — A jury convicted Hung Minh Hoang of four counts of felony

violation of a no-contact order in violation of RCW 26.50.110(1) and (5). Hoang seeks

reversal, arguing the court violated his right to due process by placing the burden of

proof on him in a contested competency hearing, the amended information is

constitutionally deficient because it incorrectly identifies the date the court issued the

no-contact order, and insufficient evidence supports finding he knew of the existence of

the November 10, 2003 no-contact order. In a recent case, State v. Coley, 180 Wn.2d

543, 551-57, 326 P.3d 702 (2014), the Washington Supreme Court held that in a

contested competency hearing following an evaluation under RCW 10.77.060, the

burden of proof is on the party contesting competency. And because the charging

documents sufficiently identify the November 10, 2003 no-contact order, substantial

evidence supports finding Hoang knew of the existence of the no-contact order. We

affirm.

FACTS

Hung Minh Hoang and B.Y.Q. met in Vietnam and got married when B.Y.Q. was 16-years-old. In 2000, B.Y.Q. moved to the United States and got a job at a supermarket in Seattle. In 2002, Hoang came to the United States.

Hoang was convicted in 2002 of assault in the fourth degree against B.Y.Q. The court issued a no-contact order prohibiting Hoang from contacting B.Y.Q. In 2003, Hoang pleaded guilty to assault in the second degree against B.Y.Q. and misdemeanor violation of a no-contact order. At the sentencing hearing on November 10, 2003, the court issued a 10-year no-contact order prohibiting Hoang from having any contact with B.Y.Q.

On April 9, 2004, Hoang pleaded guilty to a charge of felony violation of the no-contact order issued on November 10, 2003. On May 7, the court imposed a standard range sentence of 13 months and issued a 5-year no-contact order. After he was released from jail, Hoang moved to San Francisco. B.Y.Q. filed a petition for dissolution of the marriage. The decree of dissolution was entered in 2005.

In November 2011, Hoang returned to Seattle. Hoang contacted B.Y.Q. and asked her to help him renew his expired identification card and find a place to stay. B.Y.Q. agreed to help him and paid his rent because she was scared of what he might do if she refused.

During the next seven months, Hoang often went to the supermarket where B.Y.Q. worked to ask her for money. If B.Y.Q. refused, Hoang would threaten and curse at her. B.Y.Q. testified that Hoang threatened to kill her if she called the police.

During the last week of June 2012, Hoang went to the supermarket to ask B.Y.Q. for money three different times. When B.Y.Q. called the police, Hoang "t[ook] off."

2

The State charged Hoang with four counts of felony violation of a no-contact order (FVNCO) in violation of RCW 26.50.110(1) and (5) for violating the no-contact order issued on November 10, 2003. The certification for determination of probable cause correctly identifies the no-contact order as issued in November 2003, but the amended information incorrectly states the no-contact order was issued on November 3, 2006.

On September 25, 2012, defense counsel filed a motion for a competency evaluation of Hoang. The court ordered an evaluation to take place at the King County jail. After Hoang refused to cooperate, the court entered an order requiring Western State Hospital to conduct an inpatient evaluation.

Hoang spent 50 days at Western State Hospital. The hospital staff used the services of a Vietnamese interpreter to communicate with Hoang. Psychologist Elizabeth Bain conducted a "Forensic Mental Health" evaluation of Hoang and prepared a report. Dr. Bain stated that Hoang "does not appear to meet the statutory definition of an incompetent person, since Mr. Hoang does not present with any signs of a mental disease or defect." The hospital records also reflect that Hoang did not exhibit any symptoms of mental illness such as delusions or hallucinations during his commitment. Hoang was discharged from Western State Hospital on January 25, 2013.

The defense retained neuropsychologist Tedd Judd to conduct a competency evaluation of Hoang. On March 29, Dr. Judd met with Hoang for four hours at the King County jail with the assistance of a Vietnamese interpreter and a cultural consultant. Dr. Judd prepared a "Preliminary Forensic Neuropsychological Report" with a "probable diagnosis" of paranoid schizophrenia.

3

The court conducted a hearing to determine whether Hoang was competent to stand trial. Dr. Bain and Dr. Judd testified during the two-day hearing. The court found there was "no evidence, or insufficient evidence to find that Mr. Hoang suffers from schizophrenia." The court ruled Hoang was competent to stand trial.

During the three-day jury trial, Seattle Police Detective Jason Stolt, B.Y.Q., and B.Y.Q.'s supervisor testified. The court admitted into evidence a number of exhibits, including the 10-year no-contact order issued on November 10, 2003; the 5-year no-contact order issued on May 7, 2004; and the 2004 "Statement of Defendant on Plea of Guilty." Hoang stipulated that he was convicted of assault in the fourth degree in 2002 and assault in the second degree and misdemeanor violation of a no-contact order in 2003.

The defense theory at trial was that Hoang did not know the November 10, 2003 no-contact order was still in effect when he returned to Seattle in 2011. In closing, the defense argued Hoang did not know of the "current existence" of the November 10, 2003 no-contact order because of the confusion created by overlapping no-contact orders with different expiration dates.

The jury found Hoang guilty as charged of four counts of FVNCO. The court imposed a standard range sentence of 54 months and issued a 5-year no-contact order.

ANALYSIS

Contested Competency Hearing

Hoang contends the court violated his right to due process by placing the burden of proof on him at the contested competency hearing. In State v. Coley, 180 Wn.2d 543, 326 P.3d 702 (2014), the Washington Supreme Court squarely addressed and rejected the same argument. The court held that in a contested competency hearing

4

following an evaluation ordered under RCW 10.77.060, the burden of proof is on the party contesting competency. Coley, 180 Wn.2d at 547, 556. The court concluded placing the burden of proving incompetence on the defendant does not violate due process. Coley, 180 Wn.2d at 558-59.

Sufficiency of the Information

For the first time on appeal, Hoang contends the amended information is constitutionally deficient. There is no dispute the amended information erroneously identifies the date of issuance of the no-contact order as November 3, 2006 instead of November 10, 2003.

The essential elements of the crime must be included in a charging document to afford notice to an accused of the nature and cause of the accusation against him. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).

To convict Hoang of FVNCO, the State had the burden of proving beyond a reasonable doubt that (1) Hoang willfully contacted B.Y.Q., (2) a valid no-contact order prohibited such contact, (3) Hoang knew of the existence of the no-contact order, and (4) Hoang had two previous convictions for violating a no-contact order. State v. Washington, 135 Wn. App. 42, 49, 143 P.3d 606 (2006); RCW 26.50.110(1) and (5).

When reviewing a challenge to the language in a charging document for the first time on appeal, we engage in a two-part inquiry. Kjorsvik, 117 Wn.2d at 105-06. First, we examine whether "the necessary facts appear in any form, or by fair construction can they be found, in the charging document" and liberally construe the language in favor of finding it sufficient. Kjorsvik, 117 Wn.2d at 105-06. To determine whether the necessary facts appear in the charging document, we evaluate "whether all the words

used would reasonably apprise an accused of the elements of the crime charged." Kjorsvik, 117 Wn.2d at 109.

Secondly, we consider whether the defendant can demonstrate actual prejudice. Kjorsvik, 117 Wn.2d at 105-06. To determine whether the defendant was prejudiced by "inartful or vague language" in the charging documents, we evaluate whether "other circumstances of the charging process . . . reasonably inform[ed] the defendant in a timely manner of the nature of the charges." Kjorsvik, 117 Wn.2d at 106.

Hoang contends the amended information is constitutionally deficient because it does not accurately state the date of issuance for the November 10, 2003 no-contact order.

The date of issuance is only one of several facts that may be used to identify a no-contact order in a charging document. City of Seattle v. Termain, 124 Wn. App. 798, 805-06, 102 P.3d 183 (2004). In Termain, we concluded the charging document was constitutionally deficient because it did not include any facts identifying the no-contact order or the victim. Termain, 124 Wn. App. at 806. We held that a charging document alleging violation of a no-contact order must include "reference to the identity of the victim or to the underlying domestic violence order or facts of the crime." Termain, 124 Wn. App. at 805.[1]

Here, the charging documents are constitutionally sufficient to apprise Hoang of the charges against him. The amended information accurately identifies the victim and the court that issued the no-contact order. Count I of the amended information states, in

---

[1] Emphasis added.

6

pertinent part:

> That the defendant HUNG MINH HOANG in King County, Washington, on or about June 29, 2012, did know of and willfully violate the terms of a court order issued on November 3, 2006 by the King County Superior Court pursuant to RCW chapter 10.99, for the protection of [B.Y.Q.], and at the time of the violation having at least two prior convictions for violating the provisions of an order.[2]

In addition, the certification for determination of probable cause describes the facts of the crime, the terms of the no-contact order, and accurately identifies the November 10, 2003 no-contact order by the superior court cause number and expiration date. The certification for determination of probable cause states, in pertinent part:

> There is an extensive history of violence between [Hoang and B.Y.Q.] involving the police to include a 2003 felony assault conviction for Hung and an Order Prohibiting Contact Conditions of Sentence was issued. The order clearly shows Hung as the defendant and [B.Y.Q.] as the protected person, and it orders Hung to maintain a minimum of 500 feet distance from [B.Y.Q.], her residence, and her workplace. . . .
>
> **Court Orders:**
> King County Superior Court
> No-Contact Order #03-1-02260-4KNT
> Issued: 11-03-2003
> Expires: 11-10-2013
>
> At 6-29-12 at 1024 [hours], Seattle Police Officer J. Wade #7535 was dispatched to 412 12 Ave S (Hau Hau Market) for a female saying her ex-husband was there at her place of employment yelling at her 10-15 minutes ago. . . . Hung had left on foot. Officer Wade used his patrol vehicle in car MDT [(mobile data terminal)] to conduct [a] records check and found that there is a current No Contact Order in effect.[3]

Sufficiency of the Evidence

In the alternative, Hoang contends the State did not prove every element of the crime beyond a reasonable doubt. Specifically, Hoang asserts the State did not prove

---

[2] Counts II through IV repeat this language but state different dates of violation (March, April, and May 2012).

[3] Emphasis in original.

he knew of the existence of the November 10, 2003 no-contact order. Hoang claims he did not know the November 10, 2003 no-contact order remained in effect.

The State must prove each essential element of the crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Oster, 147 Wn.2d 141, 146, 52 P.3d 26 (2002). The State had the burden of proving beyond a reasonable doubt that Hoang knew of the existence of the November 10, 2003 no-contact order. RCW 26.50.110(1)(a); State v. Phillips, 94 Wn. App. 829, 833, 972 P.2d 932 (1999).

In deciding whether sufficient evidence supports a conviction, we must view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. Salinas, 119 Wn.2d at 201. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The evidence at trial established that on April 9, 2004, Hoang pleaded guilty to FVNCO for violating the November 10, 2003 no-contact order. The court admitted into evidence as an exhibit the 2004 Statement of Defendant on Plea of Guilty. The Statement of Defendant on Plea of Guilty states in Hoang's "own words" that "[i]n King County, [Washington], on February 2, 2004, I knew of and willfully violated the terms of

8

a court order issued by King County Superior Court pursuant to RCW 10.99 for the protection of [B.Y.Q.] by intentionally assaulting her."

Without objection, the court instructed the jury that it could consider the exhibit for the limited purpose of determining knowledge. Jury instruction 9 states, in pertinent part, "You may consider Exhibit 4 in determining whether the defendant had current knowledge of the no contact order at the time of the currently charged offenses."

Viewed in the light most favorable to the State, sufficient evidence supports the finding that Hoang knew of the existence of the November 10, 2003 no-contact order.

We affirm.

WE CONCUR: