[No. 53129-3.  En Banc.  March 5, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID QUIROZ, ET AL, *Appellants.*

*Sharon M. Carberry,* for appellants.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Steven R. Keller, Deputy,* for respondent.

*John Christiansen* on behalf of Washington Appellate Defender Association and *Bailey Deiongh* on behalf of Seattle–King County Public Defender Association, amici curiae for appellants.

*Norm Maleng, Prosecuting Attorney for King County, Greg R. Hubbard, Assistant Chief Deputy,* and *Celeste T. Stokes, Deputy,* amici curiae for respondent.

DORE, J.—Two juvenile offenders challenge the use of a diversion agreement in their criminal history on the basis that the agreement violated their constitutional and statutory rights.

## FACTS

This is a consolidated case dealing with two juvenile offenders. David Quiroz pleaded guilty to one count of taking a motor vehicle without permission and one count of

second degree burglary. These offenses occurred in October 1985, and Quiroz was sentenced on November 26, 1985.

The Juvenile Justice Act of 1977, RCW 13.40, provides for very structured sentences, weighing both the severity of the offense as well as the juvenile's past criminal record. Quiroz' history consisted of two prior diverted misdemeanors, stemming from a single incident in September 1985. These misdemeanors effectively increased Quiroz' sentence from a maximum of 20 to 40 days. Similar increases also occurred in the amount of community supervision, community service, and fine which Quiroz received.

Quiroz challenged the use of the September 1985 diverted misdemeanors. Specifically, Quiroz asked the trial court to void the diversion agreement because at the time he was not informed of the nature of the charges against him. Furthermore, Quiroz alleged that his right to counsel and trial was denied. The trial court refused to grant Quiroz' motion and sentenced him using the two diverted misdemeanors. Quiroz appealed. Quiroz also raised an equal protection argument, claiming that he received a longer sentence for the second set of offenses because of his diversion agreement than he would have had he pleaded guilty to the first set of charges.

The companion case deals with a similar fact pattern. Clark Haas pleaded guilty to third degree theft for stealing two packs of cigarettes from a drugstore. Haas' criminal history consisted of four misdemeanors, three of which had been diverted, and one felony. Haas challenged the use of one of the diverted offenses on constitutional grounds, as it had the effect of increasing his maximum detention sentence from 2 to 4 days as well as increasing the amount of community supervision and service. A different Yakima County judge also denied his motion to void his diversion agreement. Haas appealed, and Division Three consolidated the two cases for review before this court.

### DIVERSION AGREEMENTS

A diversion agreement is "a contract between a juvenile

accused of an offense and a diversionary unit whereby the juvenile agrees to fulfill certain conditions in lieu of prosecution." RCW 13.40.080(1). Typically, for minor offenses the county prosecutor often refers a juvenile to a probation officer who enters into a diversion agreement with the juvenile. A diversion agreement can require community service and supervision, as well as a fine, but the juvenile cannot be sentenced to detention unless after a hearing a judge decides the juvenile has violated the terms of the agreement. RCW 13.40.080(2), (6).

Diversion agreements benefit the State and the juvenile. The more informal diversion process is faster than court proceedings. The process also keeps juvenile offenders out of institutions and in the community where the resources to deal with their behavior are better suited to their age. *State v. Chatham,* 28 Wn. App. 580, 624 P.2d 1180, *review denied,* 96 Wn.2d 1006 (1981); *State v. Tracy M.,* 43 Wn. App. 888, 720 P.2d 841 (1986). Finally, although the diversion agreement may for a time figure into a juvenile's criminal history and therefore affect a detention sentence for a future offense, the agreement is not the same as a conviction. Thus, the juvenile does not have the same stigma of having been convicted of a crime. Comment, *Diversion Agreements Under Washington's Juvenile Justice Act of 1977,* 14 Gonz. L. Rev. 423, 432 (1979).

The Supreme Court has promulgated a number of rules to control the procedure which the diversion unit and the juvenile must follow in order to enter into a diversion agreement. These rules are designed to protect the juvenile's constitutional and statutory rights while at the same time ensuring that the system functions efficiently and without the delays associated with formal hearings. JuCR 6.2(a) ensures that a juvenile shall be told of his or her right to discuss with a lawyer whether or not to enter into a diversion agreement prior to the initial interview with the diversion unit. JuCR 6.3 requires that a juvenile who has chosen to waive the right to counsel sign a written waiver form to that effect. JuCR 6.4 and 6.5 require the juvenile to

be read to, and to sign an advice form describing the diversion agreement. That advice form specifically includes the fact that the agreement becomes part of the juvenile's criminal history.

### RIGHT TO COUNSEL

Quiroz and Haas challenge the method the Yakima probation officers used during the diversion process. One of their chief objections is that they did not receive an adequate opportunity to consult with counsel.

In Quiroz' case, he arrived at the diversion unit prior to his appointment and was given a form entitled "Advice About Diversion." He read this form and then discussed it point by point with the probation officer who then entered into the diversion agreement with Quiroz. The advice agreement specifically stated:

> You have the right to talk to a lawyer to help you decide whether or not you should enter into a Diversion Agreement or go to court. If you cannot afford a lawyer, the Court will appoint one at no cost. If you do not believe you committed this offense, you should talk to a lawyer.

Brief of Respondent app. 1. The probation officer further testified that had Quiroz wanted a lawyer or a more detailed explanation of the charges against him or his possible options, she would have referred him to a lawyer. Quiroz then signed the diversion agreement and a waiver of counsel form, which specifically stated:

> I know that a lawyer can look at my police reports, tell me about the law, help me understand my rights and help me decide whether I should enter into the diversion process or go to Juvenile Court.
> I have decided *not* to talk to a lawyer at this time.

Brief of Respondent app. 1.

The facts surrounding Haas' interview are similar. Haas was in detention at the time of his interview. The probation officer assigned to the case, who had entered into a prior diversion agreement with Haas, gave Haas the same type of form Quiroz received about the diversion agreement and waiver of counsel. The probation officer then explained the

forms to Haas, and Haas signed them.

Nevertheless, despite their signatures, the juveniles argue that they did not have an adequate opportunity to consult with counsel, and that any waiver of their rights could not be described as knowing, intelligent and voluntary. We agree that the short amount of time between the juveniles' receiving the forms and· signing the diversion agreement, and the fact that the onus was placed on the juveniles to decide whether to ask for an attorney creates an issue of fact as to whether their waivers were completely voluntary. However, in hearings before two different judges, with testimony from both the juveniles and the probation officers, each court found that the juveniles made knowing and voluntary waivers of their right to counsel. Ample evidence supports the trial judge's conclusion, and we therefore will not overturn on appeal the lower court's determination that the juveniles waived their rights to counsel. *Thompson v. Grays Harbor Comm'ty Hosp.,* 36 Wn. App. 300, 675 P.2d 239 (1983).

Nevertheless, to prevent this type of challenge to the diversion agreement, we believe the method described to us by the King County Juvenile Division is preferable. In King County advice to counsel forms are sent to the juvenile days prior to the initial diversion interview, giving the juvenile ample time to decide whether or not to seek the advice of counsel. Furthermore, JuCR 6.3, 6.4 and 6.5 contemplate that different forms will be signed which advise the juveniles of their rights to counsel, of the diversion process and of the effect of a diversion agreement. While it is not fatal to the agreement that these forms be combined into one piece of paper given to the juvenile before the diversion agreement is signed, we believe it would be preferable to separate the forms and give the advice about counsel and the diversion process well prior to the initial interview. Finally, while the form prescribed by JuCR 6.4 concerning the advice about diversion indicates that a juvenile has the option of entering the agreement or "going to court", the form does not list the rights which a juvenile

has if he or she chooses to go to court and that the charges might be dismissed. A brief explanation of the right to cross–examine witnesses, the presumption of innocence, and the right against self–incrimination would prove useful at this point. While we explicitly hold that failure to advise the juvenile does not offend due process principles and that the overall process as it currently stands is constitutional (see pages 798–99), such additional language would save countless challenges to these agreements while not overly complicating the procedure.

### ADEQUATE NOTICE OF CHARGES

The juveniles also argue that the diversion process did not adequately inform them of the nature of the charges against them. In both cases, the only notice the juveniles received about the nature of the charges was written at the top of the diversion agreement. In Quiroz' case, the agreement stated at the top: "Simple assault, Disorderly conduct, Resisting arrest." In Haas' case, the agreement stated "possession of a dangerous weapon." The probation officers gave no explanation as to what the legal description of the crimes were, nor what defenses or mitigating circumstances might apply. Nevertheless, the waiver of attorney form did state specifically that "a lawyer can . . . tell me about the law . . ."

The juveniles point to *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967) for authority that this notice is inadequate. In *Gault,* notice to a juvenile was first given at the initial hearing, which was an adjudication on the merits. The charge against the child was for being a juvenile delinquent, and the juvenile never was informed of the underlying charges on which a delinquency finding was to be based. The United States Supreme Court held that this notice was inadequate. The Court stated that it is required "that the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, . . . and in any event sufficiently in advance of the hearing to permit preparation." *Gault,* at

33.

■■ Both juveniles were notified of the charges against them in writing at the top of the diversion forms. They could have received a detailed explanation of the factual and legal explanations of the charges from lawyers had they chosen to do so. Furthermore, while this notice would not have been sufficient to uphold a criminal conviction by a guilty plea, the less formal nature of the diversion process, coupled with the fact that such an agreement is not the same as a conviction, justifies a less formal notice process. As we said in *Sheppard v. Rhay*, 73 Wn.2d 734, 737, 440 P.2d 422 (1968), in describing the due process requirements described in *Gault*,

> *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 Sup. Ct. 1428 (1967) . . . is not to be considered as a mandate to abandon the beneficial aspects of the juvenile court system so long as the essentials of due process and fair play are observed.

In this case, we believe the written notice given to the juveniles prior to their signing the diversion agreement which indicated that they could consult with counsel meets our conceptions of fair play. The juveniles had adequate notice of the charges.

### RIGHTS SURROUNDING TRIAL

The juveniles also argue that the diversion process is tantamount to a conviction and does not safeguard basic constitutional rights such as: the right against self-incrimination, the right of confrontation and the right to trial. They also cite to *In re Keene*, 95 Wn.2d 203, 622 P.2d 360 (1980), which holds that a plea must have a factual basis in the record in order to be valid.

These arguments fail to recognize that a fundamental difference exists between a diversion agreement, which is essentially a contract between the juvenile and the diversion unit, and a guilty plea which results in a criminal conviction. A diversion agreement cannot result in a detention sentence, and requires at most that the juvenile pay a fine

of $100 or less and attend community supervision and service activities for a short length of time. RCW 13.40.080(2). The procedure is designed to be informal, and as we held in a case determining the amount of procedural safeguards needed in a contempt proceeding, "[t]he procedural safeguards afforded in each situation should be tailored to the specific function to be served by them". *Burlingame v. Consolidated Mines & Smelting Co.,* 106 Wn.2d 328, 334, 722 P.2d 67 (1986). We believe the less formal procedure used in this diversion context need not guarantee that the juvenile be informed of the panoply of constitutional rights which the juvenile would have if he or she were pleading guilty. A diversion agreement is not equivalent to a conviction, and there is no necessity to formalize this procedure by a lengthy recitation of rights which attach during criminal proceedings.

### FUTURE USE AS A BASIS FOR INCREASING A SENTENCE

The juveniles point to this court's decision in *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980) for the proposition that an unconstitutional conviction cannot be the basis for increasing a prison sentence. In *Holsworth,* this court refused to allow a conviction based on an unconstitutionally obtained guilty plea from being used in a habitual criminal sentencing hearing. This court reasoned that the use of the conviction to impose a habitual criminal finding renewed the constitutional violation which had occurred at the time of the earlier guilty plea.

To the extent the juveniles rely on the fact that an unconstitutionally obtained diversion agreement cannot be used to enhance a sentence, we dismiss the argument because we have ruled the process used in their cases was constitutional. However, the juveniles also claim that, because the diversion agreement can later be used to increase a detention sentence, additional constitutional rights associated with criminal adjudications apply. In essence, the juveniles attempt "to bootstrap" additional

constitutional rights to the initial diversion agreement because the agreement can later have the effect of increasing a detention sentence.

This argument is without merit. In these cases the diversion agreement plainly indicated that it could serve to enhance a future crime's penalty. The agreement warned the juveniles of its effect on their criminal histories, and therefore, the juveniles cannot complain that they were unaware of its consequences. Therefore, because the agreement warned about the possibility of its future use, and because the agreement itself was not the same as a conviction, its future use did not violate their constitutional rights.

## EQUAL PROTECTION

Finally, Quiroz asserts that the trial court incorrectly calculated his criminal history because it considered all three diverted misdemeanors which arose out of the same course of conduct. RCW 13.40.020(6)(a) provides that if a juvenile is convicted of numerous offenses arising from the same course of conduct "only the highest charge from among these shall count as [criminal history] . . ." RCW 13.40.020(6)(b), which indicates that diverted misdemeanors also count in a juvenile's criminal history, does not contain a similar exclusion for less severe diverted offenses arising from the same course of conduct. Thus, a literal reading of the statute would mean that a juvenile who elects to plead guilty to a series of offenses arising out of the same course of conduct has a less severe criminal history than a juvenile who instead enters into diversion agreements for the same crimes. We agree with Quiroz that this makes little sense.

In Quiroz' case, however, it is not at all clear how his criminal history was calculated. While Quiroz entered into diversion agreements for charges of resisting arrest, disorderly conduct and simple assault, only the assault and resisting arrest charges were figured into his criminal history. From the record before us, we are not certain whether

this was done because the court viewed only two of the three charges as arising out of the same course of conduct. Nevertheless, we do not believe that it makes any difference whether or not the trial court used the correct criminal history. Quiroz specifically asked this court not to remand his case for resentencing as he had already served the sentence imposed. Since he now is over 18 and would not be subject to further juvenile proceedings for any future criminal actions, we do not decide whether the sentence originally imposed was proper, or whether the trial court should have only included the most severe diverted offense in his criminal history.

## CONCLUSION

The diversion process which both juveniles completed was constitutional and did not violate the Juvenile Court Rules which we promulgated. The trial courts therefore did not err in denying their motions to void their diversion agreements. Furthermore, although it is not clear whether or not Quiroz' criminal history should have reflected two of his prior misdemeanors, he has specifically requested this court not to remand his case for resentencing.

The trial court's orders and sentences are affirmed.

PEARSON, C.J., UTTER, DOLLIVER, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.