[No. 8592-9-III. Division Three. June 16, 1988.]

THE STATE OF WASHINGTON, *Appellant,* v. DAMON TYRONE HAABY, *Respondent.*

*Donald C. Brockett, Prosecuting Attorney,* and *James Sweetser* and *William Reeves, Deputies,* for appellant.

*Richard L. Cease, Public Defender,* and *Joyce Smith, Assistant,* for respondent.

McINTURFF, C.J.—The State appeals the juvenile court's refusal to include in Damon Haaby's criminal history two diversion agreements[1] he signed prior to his 12th birthday. The court held that the statutory presumption of infant incapacity applied, that it had not been rebutted in the prior diversion proceedings, and, therefore, the court could not use the diversion agreements to increase the standard range for Mr. Haaby's second degree burglary conviction.

RCW 9A.04.050 reads, in part:

> Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong.

In *State v. Q.D.,* 102 Wn.2d 19, 23, 26, 685 P.2d 557 (1984) the court held the statutory infant incapacity defense applies to juvenile proceedings that are criminal in nature and, that the State has the burden of rebutting the presumption of incapacity by clear and convincing evidence. It reasoned, at page 23:

> The juvenile justice system in recent years has evolved from parens patriae scheme to one more akin to adult criminal proceedings. The United States Supreme Court has been critical of the parens patriae scheme as failing to provide safeguards due an adult criminal defendant, while subjecting the juvenile defendant to similar stigma, and possible loss of liberty. *See In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1966); *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1977). This court has acknowledged Washington's departure from a strictly parens patriae scheme to a more criminal

---

[1] A diversion agreement is "a contract between a juvenile accused of an offense and a diversionary unit whereby the juvenile agrees to fulfill certain conditions in lieu of prosecution." RCW 13.40.080(1).

one, involving both rehabilitation and punishment. *In re Smiley,* 96 Wn.2d 950, 640 P.2d 7 (1982). Being a criminal defense, RCW 9A.04.050 should be available to juvenile proceedings that are criminal in nature.[2]

However, the State argues that diversion is not a juvenile proceeding which is criminal in nature. Thus, the fact the presumption of incapacity went unrebutted does not prevent the use of the diversion agreement in a juvenile's criminal history. The State directs our attention to *State v. Quiroz,* 107 Wn.2d 791, 798, 733 P.2d 963 (1987), in which the court distinguished diversion agreements from criminal convictions.

In *Quiroz,* two juveniles challenged the use of diversion agreements in their criminal histories on the ground they had entered into the agreements without being fully advised of constitutional rights. Specifically, they argued they did not receive an adequate opportunity to consult with counsel, the diversion process did not adequately inform them of the nature of the charges against them, and the process did not safeguard, *inter alia,* their right against self–incrimination, the right of confrontation, and the right to trial.

*Quiroz* held the juveniles had made a knowing, intelligent, and voluntary waiver of their right to counsel. Both had received a form entitled "Advice About Diversion" at the time they entered into the diversion agreements. The form specifically stated:

> You have the right to talk to a lawyer to help you decide whether or not you should enter into a Diversion Agreement or go to court. If you cannot afford a lawyer, the Court will appoint one at no cost. If you do not believe you committed this offense, you should talk to a lawyer.

---

[2] In *In re R.,* 1 Cal. 3d 855, 464 P.2d 127, 83 Cal. Rptr. 671 (1970), the California court addressed the same issue and noted the same concerns as did Washington in *Q.D.* The court specifically pointed out the incapacity defense provides a fundamental protection to children in proceedings which may carry severe consequences in terms of liberty and life. *In re R.,* 83 Cal. Rptr. at 678–79.

*Quiroz,* at 795. In addition, the probation officers testified they had read and discussed this form with the juveniles. Both then signed diversion agreements and waivers of counsel. *Quiroz,* at 795.

The court also rejected the juveniles' other arguments. The juveniles had been notified of the charges against them in writing at the top of the diversion forms. They could have received a more detailed explanation of the charges if they had chosen to consult with counsel. The court held these facts, coupled with the less formal nature of the diversion process, satisfied the essentials of due process and fair play. *Quiroz,* at 798. It also relied on the nature of the diversion process as support for its holding that a lengthy recitation of the rights which attach during criminal proceedings was not necessary. *Quiroz,* at 799.

In contrast, our conceptions of fair play are offended here. Because of his age at the time he entered into the diversion agreements, Mr. Haaby was presumed incapable of criminal activity. The practical effect of using those diversion agreements to increase the time of his confinement on a later charge is to punish Mr. Haaby for crimes he presumptively did not commit. Such a result is patently unfair. Thus, the holding of *Quiroz* is distinguishable, on the facts, from this case.

Finally, the State argues it is impractical to require the prosecution to establish the juvenile's incapacity during informal diversion proceedings. However, our holding is only that the State cannot include such agreements in the juvenile's criminal history if it did not rebut the statutory presumption of incapacity.

The judgment of the Superior Court is affirmed.

GREEN and THOMPSON, JJ., concur.