**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 15, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 15, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 96143-3 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| D.L., | ) | |
| | ) | Filed: April 15, 2021 |
| Petitioner. | ) | |
| | ) | |

OWENS, J. — D.L., a 14-year-old boy, pleaded guilty to a single count of child molestation. The commissioner sentenced D.L. to an extended sentence known as a manifest injustice disposition. By pleading guilty, D.L. agreed that the court could use the probable cause affidavit to establish the facts that constituted D.L's conviction. But when the court imposed the manifest injustice disposition, it relied on three facts that were not in the probable cause affidavit: (1) that D.L.'s victim had a cognitive disability, (2) that D.L. refused accountability, and (3) that D.L. would not cooperate with treatment. This case asks whether due process requires that the State

*State v. D.L.*
No. 96143-3

give a juvenile notice of these specific facts before pleading guilty if they will be used to justify a manifest injustice disposition.

Ultimately, due process requires that juveniles be treated in a manner that is fundamentally fair. As evidenced by our notice requirements in Washington case law and statutes, adequate notice of factual allegations ensures fairness by allowing defendants to make timely, informed, and strategic decisions. Allowing introduction of facts after a plea to justify a longer sentence serves only to undermine the critical strategic decision to forgo trial.

Without adequate notice, juveniles and their attorneys cannot predict which facts might be unearthed and weaponized to extend the juvenile's sentence after the plea. This lack of notice leaves juveniles unable to adequately assess the risk of receiving a disposition outside of the standard range, which could mean confinement until age 21 in some cases. Further, it allows the State to essentially upgrade the charge after already having already locked the juvenile into a guilty plea. This lack of notice causes unfair surprise to young defendants and serves only to undermine juveniles' and their families' trust in our juvenile justice system. Our adult defendants in Washington are not treated so unfairly and neither should we so treat our juveniles.

Therefore, we hold today that manifest injustice dispositions cannot be based on facts that the juvenile did not have notice of at the time of plea. The State failed to give D.L. notice of several key facts that supported D.L.'s manifest injustice

2

State v. D.L.
No. 96143-3

disposition. As a result, the manifest injustice disposition was improperly imposed. As D.L. has already served his sentence and this case is technically moot, we merely resolve this legal issue without modifying D.L.'s sentence.[1] We reverse the Court of Appeals.

## I. STATEMENT OF FACTS

In 2017, D.L., a 14-year-old boy, was charged with three counts of first degree rape and one count of attempted first degree rape of his 5-year-old half brother. At the time, D.L. had no prior criminal history. D.L. successfully negotiated a plea deal with the prosecutor, reducing the charges to a single count of first degree attempted child molestation. D.L. stipulated in his plea agreement that the trial court could use the probable cause statement to determine the facts that supported his conviction.

For sentencing, the prosecutor and defense agreed to recommend a special sex offender disposition alternative (SSODA) if D.L. qualified; otherwise, the plea agreement stated that the prosecutor would recommend a sentence within the statutory range of 15 to 36 weeks. During the plea colloquy, the court informed D.L. that it could impose a sentence outside of the standard range and commit D.L. to a facility until age 21. Sentencing was then scheduled to occur after D.L. completed the screening for the SSODA.

---

[1] State v. B.O.J., 194 Wn.2d 314, 331, 449 P.3d 1006 (2019).

3

State v. D.L.
No. 96143-3

The screening process did not go well for D.L. D.L. missed treatment dates, refused to cooperate, and denied accountability. As a result, neither the State nor D.L. recommended the SSODA. In addition, D.L.'s probation officer filed a notice of intent to seek a manifest injustice disposition and filed a supporting memorandum contrary to the prosecutor's recommendation. The memorandum alleged, among other things, (1) that the victim was cognitively impaired from a lack of oxygen at birth, (2) that D.L. denied accountability, and (3) that D.L. refused to cooperate during the SSODA screening process. None of these facts were contained in the probable cause statement. D.L.'s attorney filed a memorandum in response.

At sentencing, two probation officers testified and D.L.'s attorney cross-examined them. The commissioner imposed a manifest injustice disposition and ordered D.L. to 40 weeks in a juvenile detention center—4 weeks beyond the standard range. The commissioner entered findings on the record that a manifest injustice disposition was necessary because (1) the victim was particularly vulnerable due to his age and developmental disability and (2) D.L. was likely to reoffend based on his postconviction denial of the acts and lack of cooperation during screening. D.L. appealed, and the Court of Appeals affirmed, although noting that this absence of notice draws strong concerns regarding "the appearance of fairness." *State v. Loomer*, No. 77360-7-I, slip op. at 3 (Wash. Ct. App. Jun 25, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/773607.pdf. We grant review as to whether

4

*State v. D.L.*
No. 96143-3

D.L.'s due process right to notice was violated when he received a manifest injustice disposition based on facts that he did not have notice of at the time of plea.

## II. ISSUE PRESENTED

Before entering a plea, are juveniles entitled to notice of all facts—existing at the time of plea—that will be used to support an extended sentence?

## III. ANALYSIS

A.     *The Fundamental Fairness Standard Governs Juvenile Constitutional Rights*

Whether juveniles have a constitutional right to notice of the specific facts that support a manifest injustice disposition is an issue of state and federal constitutional law that we review de novo. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004) (citing *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004)).

D.L. received a manifest injustice disposition that was four weeks longer than the standard range sentence for the crime. Manifest injustice dispositions allow a court to extend a juvenile's sentence upward or downward from a standard range sentence. *See* RCW 13.40.020(19). A manifest injustice disposition requires a finding "that [the standard range disposition] would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society." *Id*. The upward maximum of a manifest injustice disposition is confinement until age 21. RCW 13.40.300 (1).

State v. D.L.
No. 96143-3

Juveniles are entitled to adequate notice "'of the alleged misconduct with particularity'" that "must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded." *In re Gault*, 387 U.S. 1, 33, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) (quoting PRESIDENT'S COMM'N ON LAW ENF'T & ADMIN. OF JUSTICE, THE CHALLENGE OF CRIME IN A FREE SOCIETY 87 (1967)). The question is whether this right extends to facts that will be used to support a manifest injustice disposition. Although *Gault* did not squarely address this issue, this court and the United States Supreme Court have nonetheless relied on *Gault* and its successor *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), to extend due process[2] rights to juveniles in a variety of contexts. In extending such rights, we have asked whether the right at issue is one that ensures procedures are "fundamentally fair"[3] and adheres to notions of "fair play." *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971); *Schall v. Martin*, 467 U.S. 253, 263, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984); *State v. Quiroz*, 107 Wn.2d 791, 798, 733 P.2d 963 (1987) (quoting *Sheppard v. Rhay*, 73 Wn.2d 734, 737, 440 P.2d 422

---

[2] We distinguish D.L.'s case from *State v. T.J.S.-M.*, 193 Wn.2d 450, 462, 441 P.3d 1181 (2019), as *T.J.S.-M.* examined whether there was a due process liberty interest in the sentencing scheme itself. Here, we examine what notice must be given before entry of a plea.

[3] We decline to address the applicability of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to the juvenile context as we resolve this case on the issue of ensuring fundamental fairness.

*State v. D.L.*
No. 96143-3

(1968)). Accordingly, we must ask whether providing notice of facts used to support a

manifest injustice disposition is required to ensure fundamental fairness.

B.   *Juveniles Are Deprived of Fundamental Fairness When a Court Imposes a*
     *Manifest Injustice Disposition Based on Facts That the Juvenile Did Not*
     *Have Notice of at the Time of Plea*

The quintessential requirement of notice is that it must be given at a sufficiently

meaningful time so as not to prejudice the defendant. In all cases, the earlier the notice,

the better for the defendant, as the defendant can use this time to prepare a strategy, find

witnesses, and most effectively meet the charges. But even before these actions must be

taken, the notice of the specific factual allegations allows the defendant to answer the

threshold question of whether to plead guilty or proceed to trial. This proposition has

been frequently articulated as requiring the opportunity to "'mount an adequate

defense.'" *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d 358 (2012) (quoting *State v.*

*Schaffer*, 120 Wn.2d 616, 620, 845 P.2d 281 (1993)). While we have extensive law

dictating what this requirement looks like for adults, we have yet to address juveniles'

right to notice of specific facts that could support a manifest injustice disposition.

From our case law and statutes, we can see in the adult context that timely notice

requirements protect the defendant's ability to make strategic defensive decisions. First

and foremost, we note that this case would not arise in the adult context because adults

have the right to notice of all aggravating factors before they begin trial or enter a plea.

RCW 9.94A.537(1). This notice protection ensures that prosecutors will not

7

*State v. D.L.*
No. 96143-3

purposefully withhold new facts that would support an extended sentence, only to introduce them later at trial or sentencing after a defendant has already made the decision whether to plead. Another noteworthy benefit of notice is that prosecutors are typically prohibited from amending charges "'unless the amendment is to a lesser degree of the same charge or a lesser included offense'" after the State rests its case. *Schaffer*, 120 Wn.2d at 620 (quoting *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987)). In this context, amendments after the State rests its case are allowed only where they do not mislead or surprise the defendant. Ultimately, such surprise tactics deprive defendants of making a sufficiently informed decision whether to plead or continue to trial.

Another example of our protection of the right to make an adequately informed decision to plead can be seen in *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008). There, we prohibited the prosecutor from changing the sentencing enhancer at sentencing, although the facts proved at trial would have clearly supported a firearm enhancement. *Id*. at 431-32, 441. In *Recuenco*, the prosecutor proved there was a gun, but because the prosecutor elected a deadly weapons enhancement, the prosecutor was unable to switch the enhancement to a firearm enhancement, which carried a longer sentence. *Id*. at 441. Again, Recuenco may have fundamentally altered his strategy had he known that the prosecution sought a firearm enhancement instead of a deadly weapons enhancement. The decision of what facts to contest might have been

8

fundamentally motivated by the prosecutor's charging decision—thus, allowing the prosecutor to change the charge would have undermined Recuenco's tactical decisions and deprived him of the opportunity to mount an adequate defense.

All of these concerns of fairness that apply to adults apply equally to juveniles. Late notice prohibits juveniles from making informed strategic decisions and undermines those they have already made. If we find that such notice is required to protect an adult's right to mount an adequate defense, it is troubling to think that juveniles, lacking the experience, maturity, and knowledge of adults, should receive less notice. Bearing these considerations in mind, we must first determine whether a juvenile enjoys the same constitutional right to notice as an adult. We do so by asking whether depriving juveniles of such notice deprives them of "fundamental fairness." *McKeiver*, 403 U.S. at 543.

In addressing "fundamental fairness," we focus on the point in time when D.L. entered his plea. When D.L. entered his plea, he did so based on a specific set of stipulated facts found in the probable cause statement. Neither D.L. nor his attorney would have been able to predict that the State would rely on the victim's alleged cognitive impairment to justify a manifest injustice disposition.

If we allow prosecutors and probation officers to embark on an inquisition for damaging facts to support a manifest injustice disposition, it is clear that no juvenile's attorney would ever be able to assess the risk of receiving a manifest injustice

9

*State v. D.L.*
No. 96143-3

disposition. Juveniles such as D.L. would be pleading blindly, not knowing which extrinsic facts might be unearthed that could justify confinement until age 21. We do not treat adults so harshly in Washington State and neither should we so harshly treat our youth. Permitting this practice further serves to undermine the benefits of the plea bargaining process, which protects judicial and prosecutorial resources, ensures a predictable result, and emphasizes accountability. Accordingly, we hold that the court improperly considered the victim's cognitive impairment when D.L. did not have notice that this fact might support a manifest injustice disposition.

We additionally hold that facts arising after the plea, like D.L.'s denial of responsibility and refusal of treatment, cannot be used to justify a manifest injustice disposition. As in *Recuenco*, the State here should similarly be bound to its election of charges. Had the State wanted to seek a greater confinement range, it could have charged D.L. differently. It chose not to. While upward manifest injustice dispositions may be imposed to protect the health and safety of the juvenile and the community, the most relevant factors in such a finding primarily relate to the circumstances surrounding the immediate crime as well as the juvenile's dispositional history. *See* RCW 13.40.150(3)(i). Certainly, facts arising after the plea may be relevant for dispositional purposes for determining a sentence within the standard range, but invocation of these facts without any notice to justify a longer sentence clearly runs afoul of the juvenile's

10

State v. D.L.
No. 96143-3

right to fundamental fairness. As such, the court also improperly relied on D.L.'s denial and lack of cooperation to justify the manifest injustice disposition.

C.      *The Rehabilitative Purpose of the Act Does Not Outweigh Juveniles' Due Process Protections*

The State puts forth several arguments that D.L. is not entitled to notice because this notice undermines the rehabilitative nature of the Juvenile Justice Act of 1977, ch. 13.40 RCW. We note, however, that the Juvenile Justice Act does not subordinate the due process rights of juveniles to rehabilitation. RCW 13.40.010(2)(e). Rather, due process and rehabilitation are equally important under the Juvenile Justice Act. *Id.*

Bearing this in mind, the State claims that allowing notice of aggravating factors will lead to requiring additional disclosures in the information and warnings during the plea colloquy. But we have found notice of aggravating factors to be sufficient even without a formal colloquy or charging document, and we do not impose these formalities here. *Siers*, 174 Wn.2d at 277.

Additionally, the State asserts that adding this notice will unduly impair the juvenile justice system by imposing additional notice requirements. But this argument ignores the fact that juveniles already have the right to notice of facts that will support the conviction under *Gault*, and that many of these facts will be highly relevant in determining whether a manifest injustice disposition is appropriate. *In re Gault*, 387 U.S. at 33. As the statute makes clear, the most relevant factors in finding a manifest injustice—the aggravating factors—are those listed in RCW 13.40.150(3)(i). Most, if

11

State v. D.L.
No. 96143-3

not all of these factors, are tethered to the commission of the immediate crime. *See id.*

As a result, many of the facts that would support a manifest injustice disposition can be

found in the probable cause affidavit and police reports. The factual allegations

contained in these documents can be readily incorporated as the factual basis for the

juvenile's plea. As a result, in most cases, complying with this notice requirement will

have a negligible impact on the prosecutor.

Last, the State argues that notice rights should not be expanded because "the right

to counsel is far more useful than an additional speculative warning during a plea

colloquy[, as c]ounsel can explain what a manifest injustice disposition means and when

a judge will likely impose one." State of Wash. Suppl. Br. at 17. But the right to notice

and counsel are not mutually exclusive. It is difficult, if not impossible, to weigh the

risk of a manifest injustice disposition without knowing the specific facts[4] that the State

will rely on. While the right to counsel as established in *Gault* is an important one, it is

largely meaningless if the juvenile is denied the guarantees of fundamental fairness.

Accordingly, we hold in this particular case that the rehabilitative purpose of the

Juvenile Justice Act does not supersede D.L.'s right to adequate notice.

---

[4] Requiring notice of the specific facts that could support a manifest injustice disposition ensures that the notice provided to the juvenile is meaningful. A juvenile does not have adequate notice of a manifest injustice disposition simply because it is authorized by statute. We overrule *State v. Moro*, 117 Wn. App. 913, 923, 73 P.3d 1029 (2003), and *State v. J.V.*, 132 Wn. App. 533, 539, 132 P.3d 1116 (2006), to the extent that they are inconsistent with today's opinion.

*State v. D.L.*
No. 96143-3

D.       *Where the Court Imposes a Manifest Injustice Disposition Based on Improper Factors, the Court Must Remand for Resentencing*

D.L. has since completed his manifest injustice disposition, and this case is technically moot. Accordingly, this court must decide the issue in the case without any further action. *See State v. B.O.J.*, 194 Wn.2d 314, 331, 449 P.3d 1006 (2019). Notably, the court imposed the manifest injustice based on factors that were not independently sufficient to justify the disposition. Clerk's Papers at 209. Thus, if this case were not moot, this court would "remand to the trial court for a new disposition hearing[, and o]n remand, the trial court would remain free to impose a manifest injustice based on appropriate factors." *B.O.J.*, 194 Wn.2d at 331.

## IV. CONCLUSION

Due process requires that juveniles receive notice, before pleading guilty, of any facts existing prior to plea that will be used to support a manifest injustice disposition. This ensures that juveniles are not subject to unfair surprise at sentencing by introducing new facts and ensures juveniles can make an adequately informed choice to plead guilty, just as adults do. Because D.L. has completed his sentence and this case is technically moot, this court merely decides the case without further action. We reverse.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*
No. 96143-3

Owens, J.

WE CONCUR:

Gordon McCloud, J.

Johnson, J.

Montoya-Lewis, J.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*, No. 96143-3 (González, C.J., concurring)

No. 96143-3

GONZÁLEZ, C.J. (concurring) – I concur with the lead opinion. A juvenile charged with an offense is entitled to a fundamentally fair process. It is not fundamentally fair to let children plead guilty without warning them of facts that could be used to impose a long sentence through a manifest injustice disposition.

Like an exceptional sentence for an adult, a manifest injustice disposition imposes an additional sentence beyond the standard sentencing range for a juvenile. Both the federal and our state constitutions require adequate notice of facts that might subject a person to an exceptional sentence. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (the Fourteenth and Sixth Amendments to the United States Constitution command that any fact that "'increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt'" (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)); *Blakely v. Washington*, 542 U.S. 296, 305, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (the lack of facts to support the exceptional sentence "did not comply with the Sixth Amendment"); *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d 358 (2012) ("article I, section 22 of Washington's constitution" requires prior notice of

1

*State v. D.L.*, No. 96143-3 (González, C.J., concurring)

aggravating circumstances). Juveniles deserve these same protections. *In re Gault*, 387 U.S. 1, 27-28, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) ("it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase 'due process'").

I write separately to reemphasize this court's commitment to eliminating systemic race-based injustice and inequities from our legal system. Amici amply demonstrate that racial bias influences the decision to impose a manifest injustice sentence. Br. of Fred T. Korematsu Ctr. for Law & Equality et al. as Amici Curiae in Supp. of Pet'r (Br. of Amici Curiae Korematsu Ctr. et al.) at 18-19; *see also* Br. of Amici Curiae Am. Civil Liberties Union of Wash. & King County Dep't of Pub. Def. at 3-4 (citing OFFICE OF JUVENILE JUSTICE & DELINQUENCY PREVENTION, OJJDP FY 2019 TITLE II RACIAL AND ETHNIC DISPARITIES ACTION PLAN, https://www.ojjdp.ojp.gov/sites/g/files/xyckuh176/files/media/document/WA-FY18-DMC-PLAN%20508.pdf [https://perma.cc/UL7U-T9WQ].[1] The fact that

---

[1] Amici call to our attention a considerable body of evidence that shows the juvenile criminal system disproportionately affects children of color. *See* Br. of Amici Curiae Am. Civil Liberties Union of Wash. & King County Dep't of Pub. Def. at 4-7 (citing DEP'T OF SOC. & HEALTH SERVS., WASHINGTON STATE PARTNERSHIP ON JUVENILE JUSTICE 2017 ANNUAL REPORT TO THE GOVERNOR AND STATE LEGISLATURE (2017), https://www.dcyf.wa.gov/sites/default/files/pdf/JJ-AnnnualReport2017.pdf [https://perma.cc/T7UL-5Y78] (showing that children of color are more likely to face harsher punishment in juvenile court); Ashley Nellis et al., *Reducing Racial Disparity in the Criminal Justice System: A Manual for Practitioners and Policymakers*, THE SENT'G PROJECT (2018), https://www.sentencingproject.org/wp-content/uploads/2016/01/Reducing-Racial-Disparity-in-the-Criminal-Justice-System-A-Manual-for-Practitioners-and-Policymakers.pdf [https://perma.cc/R4JQ-27AX] (study showing that probation officers viewed children differently depending on their race)).

*State v. D.L.*, No. 96143-3 (González, C.J., concurring)

children of color systematically receive disproportionately high sentences violates the promise of due process and equal protection of the law. Unfortunately, research shows that judges rely on recommendations from probation officers that consistently and effectively impose higher sentences on children of color. Br. of Amici Curiae Korematsu Ctr. et al. at 18-19 (citing Chris Guthrie et al., *Inside the Judicial Mind*, 86 CORNELL L. REV. 777 (2001) (reporting on five empirical studies of judges' biases and finding that judges are affected by the same biases and cognitive illusions as lay people); George S. Bridges & Sara Steen, *Racial Disparities in Official Assessments of Juvenile Offenders: Attributional Stereotypes as Mediating Mechanisms*, 63 AM. SOC. REV. 554, 567 (1998) (study finding that race of the defendant influences juvenile probation officer recommendations)). Requiring notice of aggravating factors will give juveniles a more meaningful opportunity to defend against outcomes that might in fact be based on racial bias. Given what we know about disproportionate outcomes for people of color in our legal system, we must take steps to ensure that all juveniles have meaningful notice and opportunity to defend against allegations that expose them to a higher sentence. *See, e.g.*, *State v. Gregory*, 192 Wn.2d 1, 18, 427 P.3d 621 (2018) (plurality opinion) ("Where new, objective information is presented for our consideration, we must account for it.").

With these observations, I concur.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*, No. 96143-3 (González, C.J., concurring)

González, C.J.

Montoya-Lewis, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

No. 96143-3

STEPHENS, J. (concurring)—Fourteen year old D.L. pleaded guilty to one count of first degree attempted child molestation. After D.L. failed to qualify for a special sex offender disposition alternative (SSODA) offered as part of his plea deal, the juvenile court imposed a manifest injustice disposition based on D.L.'s actions during the SSODA screening process and on the fact that D.L.'s victim was particularly vulnerable.

Today's lead opinion reverses D.L.'s manifest injustice disposition because D.L. did not receive notice of all facts supporting the disposition before pleading guilty. The lead opinion concludes that due process requires juvenile offenders receive preplea notice of facts the juvenile court relies on when imposing a manifest injustice disposition above the standard range. Lead opinion at 2. I agree with the lead opinion that fundamental fairness requires juvenile offenders be notified of facts

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that exist *at the time of their plea* that could support a manifest injustice sentence so they can make an informed strategic decision about whether to plead guilty. But I disagree that due process precludes the court from considering circumstances that arise after the plea but before disposition. The lead opinion's holding creates an impossible requirement, premised on the erroneous view that sentencing under the juvenile justice system parallels the adult system. It effectively strips juvenile courts of the discretion granted to them by the Juvenile Justice Act of 1977 (JJA), ch. 13.40 RCW, to consider juvenile offenders' post-plea actions and appropriately assess individual risk factors at disposition hearings. As explained in my opinion in *State v. M.S.*, No. 96894-2 (Wash. Apr. 15, 2021) (Stephens, J., concurring in part, dissenting in part), the lead opinion's flawed analysis will make the flexible juvenile justice system operate more like the rigidly punitive adult criminal justice system, resulting in more juvenile offenders being charged with new crimes, serving more time in confinement, and being burdened with longer criminal histories. Because the juvenile justice system disproportionately affects children of color, the lead opinion's decision will only exacerbate the racial inequities that infects our legal system.

I would hold that notice is sufficient when juvenile offenders are advised, before pleading guilty, that juvenile courts may consider their postplea actions at their disposition hearings and that those actions could support manifest injustice

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

dispositions. Juvenile offenders should be warned that what they say and do during a SSODA screening, a deferred disposition, or other disposition alternatives may be considered by the juvenile court in support of a manifest injustice disposition at a future disposition hearing. Providing such notice addresses the lead opinion's concern that juvenile offenders be able to make informed strategic decisions about whether to plead guilty. It does not, however, unduly limit the discretion of juvenile courts to do individual justice, nor require the impossible—preplea notice of postplea facts. Because D.L. did not receive constitutionally adequate notice here, I agree that his manifest injustice disposition must be reversed.

## RELEVANT FACTS

D.L. pleaded guilty to a count of first degree attempted child molestation. As part of D.L.'s plea deal, the State agreed to recommend a SSODA instead of a term in juvenile confinement, assuming D.L. qualified through the SSODA screening process. If D.L. did not qualify for SSODA, the State agreed to recommend a disposition within the standard range of 15 to 36 weeks in juvenile confinement. D.L. agreed that the State's probable cause statement could serve as the factual basis for his conviction. That statement mentioned the age of D.L.'s minor victim, but did not mention that the victim is cognitively delayed.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

Before accepting D.L.'s plea, the juvenile court engaged D.L. in a colloquy to ensure he understood the benefits and consequences of pleading guilty. The juvenile court confirmed D.L. understood the rights he was giving up, the SSODA screening process, and the standard range for his offense. The juvenile court also made clear that it did not have to accept the recommendation in D.L.'s plea deal and that it could send D.L. to juvenile confinement in lieu of SSODA, even if D.L. qualified.

But the juvenile court never directly told D.L. it could impose a manifest injustice disposition longer than the standard range of 15 to 36 weeks in juvenile detention. The juvenile court's only reference to dispositions outside the standard range was in the context of what D.L. would be able to appeal:

> THE COURT: Okay. And do you understand that you cannot appeal any sentence I impose within the standard range?
>
> [D.L.]: Yes.
>
> THE COURT: Okay. The only thing you could appeal would be a sentence outside the range, but otherwise, whatever I end up ordering to here you are stuck with; do you understand that?
>
> [D.L.]: Yes.

6 Verbatim Report of Proceedings (VRP) at 129-30. Similarly, the only mention of a manifest injustice disposition in D.L.'s signed plea deal was in the section describing D.L.'s limited right to appeal:

> 8. RIGHT TO APPEAL SENTENCE: I understand, that the judge must impose a sentence within the standard range, unless the judge finds by clear and convincing evidence that the standard range sentence would

4

amount to a manifest injustice. If the judge goes outside the standard range, either the state or I can appeal that sentence. If the sentence is within the standard range, no one can appeal the sentence.

Clerk's Papers at 108.

The record does not indicate that D.L. was ever told what could lead the juvenile court to impose a manifest injustice disposition, much less that his actions during the SSODA screening process could be grounds for a manifest injustice disposition. To the contrary, the juvenile court and the State made comments suggesting that D.L. should expect a standard range period of confinement if he was unable to complete SSODA:

> THE COURT: Okay. The other part of this you need to understand is that if you are allowed to do a [S]SODA, and you don't finish the [S]SODA, if you get revoked/removed from that [S]SODA, then you would almost automatically go to the institution for this standard range of 15 to 36 weeks.

6 VRP at 135.

> MS. STONE: And then I just—I know that [D.L.] realizes this, and I know that this was conveyed to him, but the State's expectation is if things don't work out, and he does not qualify or if he does eventually get revoked [from SSODA,] that it would be an agreed recommendation that he go for that standard range. . . . [T]he State wouldn't be arguing for anything outside of that range."

*Id*. at 147.

D.L. did not cooperate with the SSODA screening process. He repeatedly missed treatment dates and refused to accept accountability for his criminal actions.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

Consequently, D.L.'s probation officer filed a report with the juvenile court recommending D.L. receive a manifest injustice disposition.

At D.L.'s disposition hearing, the juvenile court found that a manifest injustice disposition was necessary because (1) D.L.'s victim was particularly vulnerable because the victim is cognitively delayed and (2) D.L.'s actions during the SSODA screening process showed D.L. posed a serious risk to reoffend. The juvenile court immediately remanded D.L. into juvenile confinement to serve a manifest injustice disposition of 36 to 40 weeks.

D.L. timely appealed, and the Court of Appeals affirmed. *State v. Loomer*, No. 77360-7-I, slip op. at 3 (Wash. Ct. App. June 25, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/773607.pdf. We granted discretionary review to decide whether the juvenile court's imposition of the manifest injustice disposition based on facts not contained in the probable cause statement violated D.L.'s due process rights.

ANALYSIS

This case asks us to decide whether due process requires juvenile offenders be given notice of the specific facts that support aggravating factors for a manifest injustice disposition before they enter a plea. The lead opinion concludes that notions of fundamental fairness require such notice. I agree in part.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

Specifically, I concur in the lead opinion's holding that juvenile offenders must be given notice, before pleading guilty, of any facts existing prior to plea that could be used to support a manifest injustice disposition. Requiring preplea notice of facts "tethered to the commission of the immediate crime" makes sense because "many of the facts that would support a manifest injustice disposition can be [included] in the probable cause affidavit and police reports" that provide the factual basis for a plea deal. Lead opinion at 12. This requirement is also consistent with the United States Supreme Court's command that juveniles must be notified of the charges against them "at the earliest practicable time" so that they have a meaningful opportunity to prepare and present a defense to contest the charges against them. *In re Gault*, 387 U.S. 1, 33, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). I agree that fundamental fairness requires juvenile offenders be notified of any existing fact that could support a manifest injustice disposition before they enter a plea. Because D.L. was not informed before pleading guilty that his victim's cognitive delays could result in a manifest injustice disposition, the juvenile court should not have considered that fact at D.L.'s disposition hearing.

Unfortunately, the lead opinion goes on to stretch that practicable notice requirement into an impossibility. In a single paragraph near the end of its analysis, the lead opinion "hold[s] that facts arising after the plea, like D.L.'s . . . refusal of treatment, cannot be used to justify a manifest injustice disposition." Lead opinion

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

at 10. The consequence is clear: because juvenile offenders can never be given preplea notice of their postplea actions, juvenile courts can never consider those postplea actions when deciding whether to impose a manifest injustice disposition. The lead opinion suggests three justifications for so limiting juvenile court's discretion, but none withstand scrutiny.

First, the lead opinion claims the State should "be bound to its election of charges" and should have "charged D.L. differently" if it "wanted to seek a greater confinement range." *Id*. But the State never tried to change the charge against D.L. and never sought a greater confinement range. It was D.L.'s probation officers— not the attorney representing the State—who recommended the juvenile court impose a manifest injustice disposition. In fact, at D.L.'s disposition hearing, the State stood by the terms of the plea deal:

> MS. STONE: I don't have anything to present, but I think as Your Honor has mentioned before, I think it's wise for the State to remind the Court that I had negotiated a certain amount of weeks in the standard range with Ms. Jones and her client. This was an offer that was extended while we were in the midst of trial, and the motivation of the State—I was hopeful that [D.L.] would qualify for the [S]SODA program because I think that that would have been the best case scenario for him, being able to get that treatment and have the State pay for it and get him the help that he needs. And I remember conveying that to Ms. Jones, and I hope that she conveyed that to [D.L.]. But now that we're at where we're at, we're looking at the plea agreement that we came to if it was found that he was not eligible or if he was revoked, which is the 15 to 36 weeks.

10 VRP at 236. The lead opinion's suggestion that the State unfairly sought a higher confinement range is unfounded.

Second, the lead opinion states without elaboration that "the most relevant factors" to juvenile courts' consideration of manifest injustice dispositions "primarily relate to the circumstances surrounding the immediate crime as well as the juvenile's dispositional history." Lead opinion at 10 (citing RCW 13.40.150(3)(i)). But nothing in the JJA restricts the juvenile courts' consideration to those factors. To the contrary, the JJA explicitly authorizes juvenile courts to consider "*all* relevant and material evidence." RCW 13.40.150(1) (emphasis added). That is why this court unanimously held juvenile courts can consider nonstatutory factors in deciding whether to impose manifest injustice dispositions. *State v. M.S.*, No. 96894-2, slip op. at 21 ("The court may consider all material and probative evidence in entering a disposition. The limit on what a court may consider as an aggravating factor is that the factor must relate to the juvenile posing a 'serious, and clear danger to society.'" (citation omitted) (citing RCW 13.40.150(1) and quoting RCW 13.40.020(19))). The lead opinion's contrary claim is inconsistent with the plain language of the JJA and untenable in light of our decision in *M.S.*

Finally, the lead opinion argues that "facts arising after the plea may be relevant for dispositional purposes for determining a sentence within the standard range," but that "invocation of these facts without any notice to justify a longer

9

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

sentence clearly runs afoul of the juvenile's right to fundamental fairness."  Lead opinion at 10.  This argument is apparently based on the lead opinion's mistaken assumption that manifest injustice dispositions in the juvenile justice context are analogous to exceptional sentences based on aggravating circumstances in the adult criminal context.  "However, a juvenile tried in juvenile court is *not* being tried in an adult criminal court and the analogy to adult criminal courts is not appropriate." *State v. S.J.C.*, 183 Wn.2d 408, 418, 352 P.3d 749 (2015) (rejecting application of the constitutional right to open courts to juvenile justice proceedings).

Instead, we must carefully consider which of the specific "procedural rules [that] have been fashioned from the generality of due process" in the adult criminal context are necessary to protect the fundamental fairness of juvenile justice proceedings.  *Gault*, 387 U.S. at 21.  To do so, we must "ascertain the precise impact of the due process requirement upon such proceedings" and inquire whether it is necessary to guarantee fundamental fairness.  *Id.* at 13-14.  That inquiry requires us to compare the juvenile and adult justice systems to determine whether the procedural rule in question will serve the same purpose.

The procedural rule at issue here is the requirement anchored in *Apprendi v. New Jersey*[1] that adult offenders be given "'sufficient notice from the State to

---

[1] 530 U.S. 466, 494, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

prepare a defense against the aggravating circumstances that the State will seek to prove in order to support an exceptional sentence.'" *State v. Siers*, 174 Wn.2d 269, 278, 274 P.3d 358 (2012) (quoting *State v. Powell*, 167 Wn.2d 672, 682, 223 P.3d 493 (2009) (plurality opinion); *Siers* overruled *Powell* in part). The lead opinion declines to analyze *Apprendi*, claiming it does not need to do so "as [it] resolve[s] this case on the issue of ensuring fundamental fairness." Lead opinion at 6 n.3. I am unconvinced that *Apprendi* can be so easily set aside. In order to resolve a case on fundamental fairness grounds, we must grapple with the due process requirement in question and analyze how it will affect juvenile justice proceedings. *Gault*, 387 U.S. at 13-14, 21. Had the lead opinion engaged in this analysis, it would have discovered that the constitutional concerns requiring notice of aggravating factors to support adult exceptional sentences do not apply with equal force in the juvenile context.

*Apprendi* holds that due process protections attach to "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," except for the fact of a prior conviction. 530 U.S. at 490. In determining whether full due process rights attach to specific facts, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the [offender's] guilty [plea]?" *Id.* at 494.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

In the adult criminal context, the finding of specific aggravating facts exposes adult offenders to higher categories of punishment than they would otherwise be eligible to receive. RCW 9.94A.535. Therefore, due process requires adult offenders receive notice of those specific facts before they enter a plea. *Apprendi*, 530 U.S. at 490 (due process protections attach to "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," other than the fact of a prior conviction).

But in the juvenile context, manifest injustice dispositions are not contingent on the finding of specific aggravating facts. Unlike adult exceptional sentences, juvenile manifest injustice dispositions are possible in every case. *See* RCW 13.40.0357, .020(19). Therefore, the finding of specific aggravating facts does not expose juvenile offenders to a higher range of punishment in the same way they do in the adult context. Another difference is that the finding of specific aggravating facts is necessary to expose adult offenders to exceptional sentences, while juvenile courts can impose manifest injustice dispositions without finding any specific aggravating facts at all. *Compare* RCW 9.94A.535(3) ("the following circumstances are an exclusive list of factors that can support a sentence above the standard range"), *with* RCW 13.40.0357, *and* RCW 13.40.020(19) (allowing juvenile courts to impose manifest injustice dispositions whenever they find that a standard range disposition "would impose a serious, and clear danger to society").

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

Because no specific set of facts expose juvenile defenders to greater punishments than they could receive in any disposition hearing, the due process concerns associated with specific aggravating facts in the adult context do not apply with equal force in the juvenile context. Nor do we serve the interests of juvenile justice by importing them here, especially because of the harsh consequences for juvenile offenders that will necessarily follow. *See M.S.*, No. 96894-2, slip op. at 22 (Stephens, J., concurring in part, dissenting in part) ("[T]oday's decision leaves the State with only one option to hold juvenile offenders . . . responsible for postplea criminal [activity]: file new criminal charges against them." (citing majority at 16)). I would therefore preserve juvenile courts' long-standing discretion to consider juvenile offenders' postplea actions when deciding whether to impose a manifest injustice disposition, so long as juvenile offenders are given meaningful notice of that discretion before entering a plea.

In sum, I believe fundamental fairness requires that juvenile offenders be notified before entering their plea (1) of any specific existing facts that could support a manifest injustice disposition and (2) that their actions after entering a plea could support a manifest injustice disposition. Distinguishing between existing and future facts in this manner addresses the lead opinion's concern that juvenile offenders be

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

able to make informed strategic decisions about whether to plead guilty without unduly limiting the discretion granted to juvenile courts by the JJA.

Under this standard, I agree the juvenile court's imposition of a manifest injustice disposition was fundamentally unfair to D.L. He was not provided any notice before his plea that the particular vulnerability of his victim could be considered to support a manifest injustice disposition. And, unlike the juvenile offender in *M.S.*, D.L. was never given sufficient notice that his actions after entering his plea—including his level of cooperation with the SSODA screening process— could be used to support a manifest injustice disposition. In *M.S.*, the juvenile court repeatedly and explicitly told the offender that he could be subject to a manifest injustice disposition if he violated the terms of his plea deal. But here, the juvenile court glossed over the possibility that it could impose a manifest injustice disposition. The words "manifest injustice" do not appear even once in the verbatim report of proceedings for D.L.'s plea hearing. 6 VRP at 122-50. The juvenile court certainly never explained that D.L.'s failure to successfully complete the SSODA screening process could be grounds for a manifest injustice disposition. Instead, the juvenile court and the State made comments at D.L.'s plea hearing that suggested D.L. could expect a disposition within the standard range if SSODA fell through. *See id*. at 135, 147.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

It is obviously impossible to give juvenile offenders notice of facts that have not yet occurred at the time they enter a plea. Due process requires only that notice be given "at the earliest practicable time." *Gault*, 387 U.S. at 33. But juvenile offenders can and should be told that juvenile courts can consider their postplea actions, including during a SSODA screening process, when deciding whether to impose a manifest injustice disposition. I would hold such notice is sufficient to satisfy the requirements of fundamental fairness. But because D.L. did not receive constitutionally sufficient notice here, I concur in the result reached by the lead opinion.

CONCLUSION

By treating juvenile manifest injustice dispositions like adult exceptional sentences, the lead opinion undermines the flexibility and discretion that has long been the hallmark of our juvenile justice system. This court recently observed that "'[i]f the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence.'" *State v. S.J.C.*, 183 Wn.2d at 418 (quoting *McKeiver v. Pennsylvania*, 403 U.S. 528, 551, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971)). No one is well served by a juvenile justice system that behaves more like the rigid and punitive adult criminal justice system, least of all juvenile offenders. I would preserve the discretion

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. D.L.*, No. 96143-3 (Stephens, J., concurring)

granted to juvenile courts by the JJA and recognize that meaningful notice of facts that may support a manifest injustice disposition must be given at the earliest practicable time. Because D.L. did not receive adequate notice here, I respectfully concur in the result to vacate his manifest injustice disposition.

Stephens, J.

Madsen, J.

Yu, J.

Whitener, J.